42 N.J. Super. 545 (1956)
127 A.2d 409
CLARENCE E. CASE, EXECUTOR OF THE LAST WILL AND TESTAMENT OF JOHN A. ROEBLING, DECEASED, PLAINTIFF,
v.
HELEN PRICE ROEBLING, DONALD ROEBLING, PAUL ROEBLING, MARY G. ROEBLING, T. COLEMAN ANDREWS, COMMISSIONER OF INTERNAL REVENUE, JOSEPH F.J. MAYER, DISTRICT DIRECTOR OF INTERNAL REVENUE, NEWARK, NEW JERSEY, AND THE UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 19, 1956.
*548 Mr. T. Girard Wharton argued for the plaintiff (Messrs. Wharton, Stewart & Davis, attorneys; Mr. William T. Stewart, Jr., and Mr. Richard H. Thiele, Jr., of counsel).
Mr. Willard G. Woelper argued for defendant Helen Price Roebling (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys; Mr. Robert A. Mathews and Mr. Robert B. Underhill, of counsel).
Mr. Worrall F. Mountain, Jr., argued for defendant Donald Roebling (Messrs. Jeffers, Mountain & Franklin, attorneys; Mr. Benjamin Franklin, III and Mr. Sidney G. Dillon, of counsel).
Mr. John Milton argued for defendants Paul Roebling and Mary G. Roebling (Messrs Milton, McNulty & Augelli and Mr. J. Conner French, attorneys).
SCHETTINO, J.S.C.
Plaintiff-executor of the last will and testament of John A. Roebling, deceased, seeks a construction of the decedent's will as it relates to the apportionment of the ultimate burden of the federal estate tax levied or to be levied upon the estate by the United States Government. The action was dismissed as to the United States of America and two federal taxing officials on the ground of want of jurisdiction over the persons of said defendants, and the remaining defendants constitute all of the beneficiaries under the decedent's will against whose shares the burden of the federal estate tax might be apportioned. The case has been submitted on pretrial order, stipulations, memoranda of law and oral argument.
John A. Roebling, a resident of the Borough of Bernardsville, Somerset County, New Jersey, died on February 2, 1952, at the age of 84. The following beneficiaries survived him: his widow, Helen Price Roebling; a son, Donald Roebling; a grandson, Paul Roebling, child of testator's deceased son, Siegfried Roebling; and a daughter-in-law, Mary G. Roebling, mother of Paul Roebling. Helen Price *549 Roebling was the testator's second wife. No child was born of this marriage. By his last will and testament, executed on July 1, 1942, he gave to his widow his residence in Bernardsville, "Boulderwood," and certain of its furnishings and equipment. His daughter-in-law received a legacy of $250,000. The residuary estate was given outright in equal shares to the above-named son, grandson and widow.
While the precise value of the estate for federal estate tax purposes cannot be determined until certain issues, including the valuation of a large block of unlisted stock, are settled by the estate with the United States Internal Revenue Service, the pretrial order indicates that on the basis of the position presently taken by the Internal Revenue Service the estate will be valued at $15,198,884 before deductions for debts, administration expenses and taxes. On this basis the estate is $14,318,226.27 without, however, taking into account the marital deduction phase of the estate tax. The amounts of each beneficiary's interest in the net estate before taxes, as stipulated in the pretrial order, are as follows (the percentages are computed):

 Helen Price Roebling .............. $4,742,190.09 33.12%
 Donald Roebling ................... 4,663,018.09 32.57%
 Paul Roebling ..................... 4,663,018.09 32.57%
 Mary G. Roebling .................. 250,000.00 1.74%
 ______________ _______
 $14,318,226.27 100.00%

The widow's share is larger than those of the son and grandson because, in addition to a one-third interest in the residue, she also receives the residence and some of its tangible personalty, as mentioned above.
The determination of this case depends upon the construction of paragraph Eighth of the decedent's will. It reads as follows:
"Eighth: I further order and direct that each beneficiary under this my last Will and Testament shall be chargeable with all inheritance, succession, transfer or estate taxes upon the legacies, devises or shares to her or him hereinbefore given, to be computed in manner following:
*550 Where the tax is computed on the value of the whole estate, she or he shall be chargeable with such a proportion of the whole tax imposed against my estate as the taxable valuation of the legacy, devise or share hereinbefore given to her or him, shall bear to the valuation of my entire taxable estate and where the tax is computed on the valuation of the legacy, devise or share, she or he shall be chargeable with the whole tax imposed on said legacy, devise or share."
Counsel state that there is no dispute as to the manner in which New Jersey transfer inheritance taxes are to be apportioned under the provision quoted above. I do not, therefore, need consider the state transfer inheritance tax problem, but I limit  as do counsel  the issue to the allocation of the burden of federal estate taxes under the will. I suggest, however, that if an appeal is taken, the Attorney General be requested to appear as amicus curiae.
Its resolution depends upon the application of the marital deduction provided by sections 812(e) (1) (A); (e) (1) (E) (i); and (e) (1) (H) of the Internal Revenue Code of 1939, as amended in 1948. Plaintiff-executor has taken the position throughout the course of administration of this estate that, under the decedent's will, his widow, whose share of the estate is considerably less than 50%, is not required to pay any part of the federal estate tax and that the widow's share is relieved from federal estate tax by the marital deduction. That the results are therefore: (1) the taxable estate for federal tax purposes is reduced by a marital deduction consisting of the full value of the share of the estate passing to Mrs. Roebling; (2) the federal estate tax on this reduced estate is computed, and (3) the resulting tax is apportioned among the shares of the other beneficiaries, which form the basis for the taxable estate. The defendant widow is in accord with plaintiff's constructions.
Plaintiff contends that upon an examination of paragraph Eighth, two points at once become apparent: (1) the testator was fully aware of the distinction between inheritance taxes, which are "imposed" directly upon the "legacy, *551 devise or share" of each beneficiary, and estate taxes which, as a matter of law, are levied upon the entire taxable estate; and (2) while cognizant of this basic difference, the testator, nevertheless, looked to the realities of the tax situation and knew that the ultimate burden of two very sizeable taxes, i.e., New Jersey transfer inheritance taxes levied directly on his beneficiaries' shares and a federal estate tax levied on the whole taxable estate, would have to fall on the shares of the beneficiaries under his will. That with these two fundamentals in mind, the testator set out to apportion the burden of both of these taxes, choosing what he must have considered the most equitable system of apportionment available.
Plaintiff states that testator first expressed his general intent with regard to all taxes in the unmistakable language of the first paragraph:
"Eighth: I further order and direct that each beneficiary under this my last Will and Testament shall be chargeable with all inheritance, succession, transfer or estate taxes upon the legacies, devises or shares to her or him hereinbefore given, to be computed in manner following: * * *" (Italics added)
Thus all taxes, be they inheritance, succession, transfer or estate, are to be deemed imposed upon the legacies, devises or shares passing to each particular beneficiary and no beneficiary should or can under this will be charged with any tax upon the share or shares of others. Moreover, the testator went further and, in the light of the distinction between inheritance and estate taxes referred to above, devoted the second paragraph of Eighth to clarification of the application of his general intent by setting up a formula for dealing with taxes "computed on the value of the whole estate," i.e., estate taxes, and in the second he declared his intent with regard to taxes "computed on the valuation of the legacy, devise or share" of a beneficiary, i.e., inheritance taxes such as the New Jersey transfer inheritance tax.
Taking this second clause first, the testator directed that
*552 "* * * where the tax is computed on the valuation of the legacy, devise or share, she or he shall be chargeable with the whole tax imposed on said legacy, devise or share."
The New Jersey transfer inheritance tax automatically apportions the tax to each beneficiary in accordance with his share and status  by levying it directly upon each beneficiary in accordance with the size of his share and the degree of consanguinity to decedent. Thus, the legal incidence of the New Jersey transfer inheritance tax completely accorded with the testator's basic aim: that each beneficiary should bear the tax attributable to his share. The testator, finding such a tax fully consonant with his belief that each beneficiary should pay his or her own way, contented himself with reiterating the formula of the taxing statute and allowing the tax and any benefits granted thereunder to fall upon and to inure to the benefit of the particular beneficiary.
An argument made by the other defendants is that plaintiff's position if sustained would create a non-equal distribution  i.e., a distorted distribution instead of an equal distribution. They say that an analysis of Mr. Roebling's will reveals a simple, dominant purpose, that is, to distribute the great bulk of his estate in equal shares to his widow, his son, and the child of a deceased son, and that in order to ensure an ultimate equal distribution it might be found necessary to distribute the burden of the taxes payable out of the estate equally among all the main beneficiaries. That therefore the residue of the estate, amounting to 97.71% of the whole, should be divided equally among the widow, the son and the grandson  all members of his immediate family and all admittedly sharing his love and affection.
These defendants also contend that when the testator drew his will, his intention was to equalize the tax burden among the residuary beneficiaries. They maintain that the will clearly and unambiguously declares that each beneficiary *553 was to bear a proportionate share of the tax based on the ratio which the value, as determined for tax purposes, of the property given him bears to the valuation, as determined for tax purposes, of the testator's entire disposable estate.
They further contend that the subsequently enacted marital deduction amendment, being a deduction strictly for the benefit of the estate, had no effect on the proportions of the tax which the respective beneficiaries would bear, and that the construction as to the effect of the marital deduction sought by the executor and widow would completely thwart the testator's scheme for equal distribution of his estate.
Defendants also contend that the tax clause must be considered in the light of this testamentary intent and of the situation existing in 1942. It seems to them that it effected only two slight changes in the incidence of death taxes. Firstly, it shifted from the residuary estate to the testator's daughter-in-law, Mary G. Roebling, the proportionate part of the federal estate tax chargeable to her bequest. To this extent the three principal beneficiaries were equally relieved of a tax burden. Secondly, it shifted to the testator's widow the proportionate part of the federal tax chargeable to her legacy of "Boulderwood" and its furnishings. By thus increasing the widow's share of the tax, her net distributable share, hitherto slightly larger than the other two shares, was reduced to a more exact parity with these other two shares.
It altered in no way whatsoever the incidence of the New Jersey transfer inheritance tax. In respect to the federal estate tax, it did two things, tending in the one case to relieve the primary beneficiaries to some degree of their common tax burden and in the other case to equalize even more exactly the net distributable shares payable to these same primary beneficiaries. They conclude that it is perfectly plain that the effect of the tax apportionment clause at the time it was drawn was to achieve even more precise equality of distribution than would otherwise have been the case. It had no other effect.
*554 The parties stipulated that: "(d) The following table illustrates the difference in distribution of the decedent's estate depending on whether his widow's share of the estate is chargeable with no portion of the federal estate tax, as contended by the plaintiff and the defendant, Helen Price Roebling, or whether said share is chargeable with its pro rata share of the federal estate tax, as contended by the other defendants. The figures, with some minor adjustments, are based upon the position taken by the United States Internal Revenue Service in its 90 day notice of deficiency, dated April 16, 1956, inasmuch as the ultimate value of the estate for estate tax purposes cannot be determined until other matters, particularly the value of a large block of unlisted stock in a closely held corporation, are settled by the estate with the Internal Revenue Service.
"On the basis of the valuations used by the Internal Revenue Service in its 90 day notice of deficiency, the decedent's total gross estate for federal tax purposes is $15,198,884.00. The adjusted gross estate, after proper allowance for debts, executor's commissions and counsel fees, would be approximately $14,318,226.27. On this basis, the table below indicates the approximate federal estate tax, if any, which may be chargeable to the share of each beneficiary under the decedent's will and the approximate net share which will remain to each beneficiary after the payment of said taxes, as well as the total taxes and the total net estate after taxes under each of the constructions of said will referred to above. In said table, the beneficiaries are referred to as follows: the defendant, Helen Price Roebling, the decedent's widow, as HPR; the defendant, Donald Roebling, the decedent's son, as DR; the defendant, Paul Roebling, the decedent's grandson, as PR, and the defendant, Mary G. Roebling, the decedent's daughter-in-law, as MGR.

*555
Adjusted gross estate before marital deduction ..... $14,318,226.27
 Division of Adjusted Gross Estate Among Beneficiaries
 Without Deduction for Estate and Inheritance Taxes
 HPR ............................. $4,742,190.09
 DR .............................. 4,663,018.09
 PR .............................. 4,663,018.09
 MGR ............................. 250,000.00
 ______________
 $14,318,226.27
 1. 2.
HPR pays no part of HPR pays proportionate share
federal estate tax of federal estate tax
 N.J. inheritance taxes[*] N.J. taxes
 Inheritance[*] Estate
HPR ....... $425,990.00 HPR ........... $425,990.00 $39,520.53
DR ........ 397,550.00 DR ............ 397,550.00 60,230.13
PR ........ 397,550.00 PR ............ 397,550.00 60,230.13
MGR ....... 12,500.00 MGR ........... 12,500.00 11,956.17
 _____________ _____________ ___________
 $1,233,590.00 $1,233,590.00 $171,936.96
 Total N.J. inheritance and
 estate taxes
 HPR ...................... $465,510.53 (+ $39,520.53)
 DR ....................... 457,780.13 (+ 60,230.13)
 PR ....................... 457,780.13 (+ 60,230.13)
 MGR ...................... 24,456.17 (+ 11,956.17)
 _____________ ____________
 $1,405,526.96 (+ $171,936.96)
 Net federal estate tax[**] Net federal estate tax[**]
HPR ....... $0.00 HPR ..... $2,075,496.76 (+$2,075,496.76)
DR ........ 2,423,424.95 DR ...... 2,041,030.49 (- 382,394.46)
PR ........ 2,423,424.94 PR ...... 2,041,030.48 (- 382,394.46)
MGR ....... 129,382.03 MGR ..... 109,038.78 (- 20,343.25)
 _____________ _____________ ______________
 $4,976,231.92 $6,266,596.51 (+$1,290,364.59)
 Net shares Net shares
HPR ....... $4,316.200.09 HPR .... $2,201,182.80 (-$2,115,017.29)
DR ........ 1,842.043.14 DR ..... 2,164,207.47 (+ 322,164.33)
PR ........ 1,842,043.15 PR ..... 2,164,207.48 (+ 322,164.33)
MGR ....... 108,117.97 MGR .... 116,505.05 (+ 8,387.08)
 _____________ _____________ ______________
 $8,108,404.35 $6,646,102.80 (-$1,462,301.55)

*556
 Recapitulation Recapitulation
N.J. taxes $1,233,590.00 N.J. taxes $1,405,526.96
Fed. taxes 4,976,231.92[1] Fed. taxes 6,266,596.51[1]
Net shares 8,108,404.35 Net shares 6,646,102.80
 ______________ _______________
 Total $14,318,226.27 Total $14,318,226.27"
(+ $171,936.96)
(+1,290,364.59)[1]
(-1,462,301.55)

The issue is simple to state. Under the executor's construction of the will, the decedent's surviving spouse would be given the full benefit of the marital deduction for federal estate tax purposes, and she would pay no share of federal estate tax. Under the construction placed upon the will by certain of the defendants, a portion of the federal estate tax would be charged to the widow's share.
As a matter of federal tax law, allocation of the burden of estate taxes is controlled by state law and "Congress intended that state law should determine the ultimate thrust of the tax," Riggs v. Del Drago, 317 U.S. 95, 98, 63 S.Ct. 109, 110, 87 L.Ed. 106 (1942). This ultimate thrust is subject to section 826(a) and (d) of the Internal Revenue Code which give the executor limited rights to demand contributions for a share of the estate tax only in the case of life insurance proceeds and from property subject to a taxable power of appointment and not exonerated from the tax thrust by the testator. In re *558 Estate of Atwell, 85 Cal. App.2d 454, 460, 193 P.2d 519 (App. Ct. 1948). In Bankers Trust Company v. Hess, 2 N.J. Super. 308, 312-313 (Ch. Div. 1949), we note:
"The distinction between federal estate taxes and inheritance taxes, and the obligations for the payment thereof, have been authoritatively adjudicated. Inheritance taxes, in the absence of contrary testamentary provisions, are assessed against and are payable by each legatee or devisee, and, if paid by the executor, he is entitled to reimbursement. * * * The federal estate tax is imposed on the transfer of the entire net estate of the decedent and not upon any particular legacy, devise or distributive share. It is payable primarily by the executor of the estate before distribution. 26 U.S.C.A. § 822 (b). A state is free to regulate the apportionment of the burden of the federal tax. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 142 A.L.R. 1131. But there is no such regulatory statutory provision in New Jersey, hence, the federal tax falls upon and is payable out of the residuary estate, unless the will provides otherwise."
A state court determination of that issue binds the federal taxing authorities, i.e., "the state judgment must be given conclusive effect in determining federal tax liability," Gallagher v. Smith, 223 F.2d 218, 222-223 (3d Cir. 1955). In New Jersey the will of the testator controls the apportionment of the tax burden and, in construing a will on a question of tax apportionment, the court, as in other will cases, is concerned with ascertaining the intent of the testator from the language of his will. In Morristown Trust Co. v. McCann, 19 N.J. 568, at page 572 (1955), Mr. Justice Burling said:
"It has long been recognized that consideration is to be initially devoted to the language of the instrument itself taken in context with the surrounding facts and circumstances, thus endeavoring to ascertain the intent of the testator, In re Fox' Estate, 4 N.J. 587, 593 (1950); Lawes v. Lynch, 6 N.J. 1, 6 (1950); In re Armour's Estate, 11 N.J. 257, 271 (1953); 2 Page on Wills (3d ed. 1941), sec. 920. Professor Simes would characterize this initial endeavor as ascertaining the most probable intent of the testator for it is impossible to determine with absolute certainty his actual subjective intent. 2 Simes Law of Future Interests (1936), sec. 307. This thought is reflected in the Restatement of the Law of Property, sec. 241 (1940) where the `judicially ascertained intent' is stated to be the product of construction.
*559 "It is only when the court is left in doubt by the terms of the will and the surrounding circumstances of the testator's most probable intent that resort is made to the numerous rules of construction. Rosencrans v. Fry, 12 N.J. 88, 97 (1953); In re Fisler's Estate, 133 N.J. Eq. 421, 423 (E. & A. 1943); 5 Clapp on Wills and Administration (New Jersey Practice), sec. 103, p. 235 (1950)."
The legal incidence of the federal estate tax is upon the entire estate and, prior to adoption of a state apportionment statute in 1950, the rule in New Jersey had long been that, in the absence of testamentary provision to the contrary, the ultimate burden of the federal estate tax fell upon the residuary estate. In re Gardner's Estate, 35 N.J. Super. 163, 166 (App. Div. 1955); Gaede v. Carroll, 114 N.J. Eq. 524, 533 (E. & A. 1933). Cf. the state apportionment statute referred to above, N.J.S. 3A:25-30 et seq. (L. 1950, c. 327) is not applicable to Mr. Roebling's will. The New Jersey rule in effect when Mr. Roebling executed his will in 1942 levied the entire federal estate tax against the residuary beneficiaries equally without regard to special deductions or benefits attributable to their shares.
The first clause of the second paragraph of Eighth reads:
"Where the tax is computed on the value of the whole estate, she or he shall be chargeable with such a proportion of the whole tax imposed against my estate as the taxable valuation of the legacy, devise or share hereinbefore given to her or him shall bear to the valuation of my entire taxable estate." (Italics added)
To determine the tax chargeable to each beneficiary the testator directed the executor to determine the total estate tax and to apportion it in the same ratio that the "taxable valuation" of a beneficiary's share bears "to the valuation of my entire taxable estate." I believe, as plaintiff contends, that the key words in the clause are these words  firstly, the share must be "taxable," and secondly, is it a valuation used in determining the tax. The testator clearly indicated concern not only with the gross values of either his estate or of an individual beneficiary's share, but also with the net taxable value of his estate and the net taxable value of the beneficiary's share.
*560 Since the "taxable estate" under the federal estate tax law can be determined only after deducting the marital deduction as well as other items, the "taxable valuation" of each beneficiary's share can only be determined if it is used as an element or as a part basis for determining the estate tax. Here, the estate is credited with the full marital deduction since it is less than 50% in determining the "valuation of [the] entire taxable estate."
How have other states handled the marital deduction provision and its impact on beneficiaries? An examination of the marital deduction provision discloses that Congress did not determine the burden of the tax. 26 U.S.C.A. § 812(e) (1) (E) (i) provides:
"There shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest."
Congress undertook to place property of married persons residing in common-law states upon an equal basis with property of married persons residing in community-property states, so far as the federal estate tax is concerned. Under this provision, property passing in a common-law state from a decedent to the surviving spouse is deducted from the decedent's gross estate up to a limit of 50% of the value of the decedent's gross estate, less deductions for funeral expenses, debts and other claims against the estate.
In the House of Representatives Report No. 1274, 80th Congress, 2d Session, January 27, 1948 (See New Jersey State Library, 1 House Miscellaneous Reports, 80th Cong., 2d Sess., 11209) the following comments are found:

"B Estate and Gift Taxes
1. The 1942 amendments to the estate and gift tax which provided special rules for community-property States are repealed for persons dying after the enactment of this bill. Generally, this restores the rule by which estate and gift-tax liabilities are dependent upon the ownership of the property under State law. Thus, in community-property States, irrespective of which spouse dies first, only one-half of the community property is included in the gross estate. Similarly, one-half of a gift made out of community property is taxable to *561 the husband and one-half to the wife, since under State law each owns a one-half interest in the property.
2. A committee amendment will be offered on the floor of the House to provide for estate and gift-tax `splitting' in common-law States. This amendment also will apply to persons dying after the enactment of this bill, so that both the community-property States and the common-law States may be placed on an equal basis at the same time. Thus, in these States property passing from a decedent to his spouse is excluded from the decedent's estate-tax base up to a limit of 50 percent of the value of his estate. In a similar fashion husbands and wives may treat gifts made currently as being made one-half by each spouse. Residents of community-property States may also take advantage of this provision. If they do so, the effect will be to extend this `splitting' to their separate property. The repeal of the 1942 amendments already gives them the right to split community property. In effect, these amendments represent the adoption of a new national system for ascertaining Federal estate and gift-tax liability. The adoption of these amendments will extend substantial benefits to residents of both community property and common law states. The delay in the preparation of this amendment is due to the inherent difficulties of the subject." (page 4)

* * * * * * * *

"B The Estate and Gift Taxes
The basic differences between community and common law interpretations of property rights have also resulted in geographical inequalities in the application of the estate and gift taxes. Prior to 1942 the taxation of transfers made by married persons depended upon the property law of the State in which the transfer took place. In community-property States only half of the community property belonged to one spouse. Hence only half could pass at his death, and only half could be subjected to the estate tax. Similarly, gifts out of community assets were regarded as one-half the gift of the husband and one-half the gift of the wife. No similar division of assets occurred under common law because, in most cases, practically all the property was the husband's under State law. Since both estate and gift taxes have sharply progressive rates and are equipped with large exemptions, the consequence was a substantially lower tax on transfers in community-property States than on transfers of similar size in common-law States." (at pp. 24-25)

* * * * * * * *
"A case in which the transfer in the common-law State is taxed more harshly occurs when the wife dies first, and most of the property belongs to the husband. Under common law there would be no tax due on the wife's death and the entire property would be taxable at the death of the husband. If these same assets were community property, one-half would be taxable at the death of the wife and the other at the death of the husband. Because the rates applied are progressive and the exemption substantial, the result is a larger aggregate tax in the common-law States than in community property jurisdictions." (at p. 26)
*562 Similar language is found in United States Senate Report No. 1013, 80th Congress, 2d Session, March 15, 1948 (see New Jersey State Library, 2 Senate Miscellaneous Reports, 80th Cong., 2d Sess., 11206), at pages 1, 26, 27.
We find in 94 Congressional Record 3037 the following:
"Provision is made for estate and gift tax splitting of noncommunity property. This provision will apply to persons dying after the date of the enactment of this bill, so that community property and noncommunity property may be placed on an equal basis at the same time."
Inherent in Congress' plan to equalize the estate tax as it applied to estates in common-law and community property states was the intent to give the same treatment and benefits to surviving spouses in both categories of states. Where a married resident dies in a community-property state, the surviving spouse is considered to own one-half of the entire community estate of the deceased spouse and this one-half share is not subject to the estate tax. In a common-law state, where a surviving spouse is entitled to a portion of the deceased spouse's estate, a share up to one-half of the estate received by the surviving spouse is not subject to the federal estate tax.
The other states of the Union are divided with reference to whether the surviving spouse's share of decedent's estate should bear any of the thrust of the tax.
In Lincoln Bank & Trust Co. v. Huber, 240 S.W.2d 89, 91 (Ky. Ct. App. 1951) the court said:
"It appears to us that the apparent purpose behind the enactment of the U.S. Code above was to equalize the estate tax in non-community property states, with that of community property states, and to prepare the way for elimination from the tax burden all those whose legacies or allotments do not create or add to the tax."
And In re Peters' Will, 88 N.Y.S.2d 142, 147-148 (Sur. 1949), affirmed 275 App. Div. 950, 89 N.Y.S.2d 651 (App. Div. 1949) we find:
"All of the foregoing cases were decided before the enactment of the U.S. Revenue Act of 1948. Section 812(e), Internal Revenue *563 Code, 26 U.S.C.A. § 812(e), which has introduced a new legal concept referred to as a `marital deduction' cannot be overlooked in this connection. Its purpose is to allow a surviving spouse to take a certain portion of the estate free of Federal estate taxes. Had decedent in the case at bar died intestate the petitioner, as his widow, would be entitled to one-third of his net estate before estate taxes, Section 83, Decedent Estate Law. Her share would qualify as a marital deduction and escape Federal estate taxes.

* * * * * * * *
I believe that the marital deduction now allowed by Section 812(e) Internal Revenue Code is substantially in the same category as the charitable deduction allowed by Section 812 (d) of the Code, which immediately precedes it, and that just as a charitable bequest is free of Federal estate taxes so is a widow's intestate share except for certain limitations not applicable here.
* * * Petitioner's portion of the estate tax on her intestate share will be in the proportion that the value thereof bears to the total value of said gross estate with proper allowances for her exemption of $20,000 with respect to estate taxes payable to the State of New York and for her marital deduction with respect to estate taxes payable to the Federal government."
Contrary results have been reached in other states.
Sections 812(e) (1) (E) and subdivision (i) of the marital deduction provision were held by the Wisconsin Supreme Court in In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641, 645, 38 A.L.R.2d 961 (1953), "to expressly negative any intent on the part of Congress that the widow's share of the personal estate in the instant case should entirely escape the impact of all of the federal estate tax."
In Illinois a similar conclusion was reached. In First National Bank of Chicago v. Hart, 383 Ill. 489, 50 N.E.2d 461, 465 (Sup. Ct. 1943), it was said:
"In the absence of statutory enactment directing otherwise, the Federal tax must be considered as a charge against the whole of the estate and not against the individual shares * * * unless otherwise specifically directed by the testator."
An Illinois statute provided that where a widow renounces her right to take under a will her share in the estate is determined after payment of all just claims. The Illinois court considered that the federal estate tax constituted a just claim, the same as a debt, and, therefore, the federal *564 estate tax must be deducted before apportioning the renouncing widow's share. And in Northern Trust Co. v. Wilson, 344 Ill. App. 508, 101 N.E.2d 604, 607 (App. Ct. 1951), it was held that, notwithstanding the federal statute of 1948, under appropriate state statute the dissenting widow took her statutory share of her husband's estate after deduction of the federal estate tax. See also Wachovia Bank & Trust Co. v. Green, 236 N.C. 654, 73 S.E.2d 879 (1953).
Analyzing the equal distribution theory of the defendants we note the effects of the opposing contentions in tabular form  indicating the net shares of the three primary beneficiaries after taxes and also the percentage each share represents of the total distributable estate. The first column shows the result which would have occurred had the testator died in 1942 or at any time before the 1948 marital deduction law. The second and third columns demonstrate the results which will follow depending upon which contention is applicable at Mr. Roebling's death:

 Net Shares After All Taxes
 1 2 3
 1942 1952 1952
 Contention of Contentions of
 Pltf & Deft HPR other defendants
H.P.R. ........ 1,622,400.04 4,316.200.09 2,201,182.80
D.R. .......... 1,616,648.54 1,842,043.14 2,164,207.47
P.R. .......... 1,616,648.54 1,842,043.15 2,164,207.48
M.G.R. ........ 95,494.92 108,117.97 116,505.05
 ____________ ____________ ____________
 4,951,192.04 8,108,404.35 6,646,102.80
 Percentage each share represents of distributable estate
H.P.R. ........... 32.768 53.231 33.120
D.R. ............. 32.652 22.718 32.564
P.R. ............. 32.652 22.718 32.564
M.G.R. ........... 1.928 1.333 1.752
 _______ _______ _______
 100.000 100.000 100.000

The widow would receive something more than one-half of the decedent's bounty if we note the second column.
*565 A like distortion in the resulting amounts of distributive shares recently weighed heavily with the Supreme Court of Ohio in a similar and important case. Campbell v. Lloyd, 162 Ohio St. 203, 122 N.E.2d 695 (1954), certiorari denied 349 U.S. 948, 75 S.Ct. 870, 99 L.Ed. 1274 (1955). Prior to this decision the Ohio Supreme Court in the earlier case of Miller v. Hammond, 156 Ohio St. 475, 104 N.E.2d 9 (1952), had held that where a widow renounced and elected to take her statutory share against the will, she took her share without contribution to federal estate taxes upon the basis of "fundamental principles of equity." The justice writing the majority opinion in the second case used the same approach in the first case and filed a dissent when he could not convince the then majority of his approach. One of the principal grounds for the reversal was the fact that the result of giving the widow an exemption from contributing her share of the federal estate tax on account of the marital deduction would be to give her 37 to 42% more than her statutory share. In referring to the excess amount the widow would receive the court stated, 122 N.E.2d on page 697:
"In view of this result, we are inevitably though reluctantly led to a reconsideration of our decision in Miller v. Hammond, * * *."
The effects of the two opposing positions are illustrated by the table in the pretrial order.

 1 2
 HPR pays no part of HPR pays proportionate
 federal estate tax share of federal estate tax
 * * * * * * * *
 Net federal estate tax Net federal estate tax
HPR .......... $0.00 HPR ............. $2,075,496.76
DR ........... 2,423,424.95 DR .............. 2,041,030.49
PR ........... 2,423,424.94 PR .............. 2,041,030.48
MGR .......... 129,382.03 MGR ............. 109,038.78
 _____________ _____________
 $4,976,231.92 $6,266,596.51

This construction also increases the shares of the other beneficiaries as a result of dividing the benefits of the *566 marital deduction among all of the beneficiaries rather than according them to the widow, whose share of the estate alone gives rise to the deduction:

 1 2
 HPR pays no part of HPR pays proportionate
 federal estate tax share of federal estate tax
 * * * * * * * *
 Net shares Net shares
HPR .......... $4,316,200.09 HPR ............. $2,201,182.80
DR ........... 1,842,043.14 DR .............. 2,164,207.47
PR ........... 1,842,043.15 PR .............. 2,164,207.48
MGR .......... 108,117.97 MGR ............. 116,505.05
 _____________ _____________
 $8,108,404.35 $6,646,102.80

In summary, defendants' construction of the will would have the following consequences:
(a) The widow's share would be reduced by $2,075,496.76;
(b) The share of each of the two other main beneficiaries would be increased by $322,164.33 apiece; and
(c) Increased taxes of $1,290,364.33 would be payable to the Federal Government.
General and overall testamentary intent is to be found within the whole and the four corners of a will, including the dispositive and the tax clause provisions. Primary testamentary intent will be made manifest from such study. In drafting a will the testator  especially one of great wealth  is concerned with how few taxes can be levied against his estate, in what amounts and how taxes shall be paid. The tax burden must weigh heavily in any estate plan of distribution. Can any reasonable person conceive the situation in which this testator would want his estate burdened with increased taxes of about $1,300,000? I cannot.
I concede that the dispositive provisions of the will leave no doubt that equality of distribution among the three principal beneficiaries was very important in the testator's mind. But just as important, as evidenced by the careful wording, was the tax clause, and I am convinced that the *567 testator intended to have each beneficiary's share bear the tax load which it flowers.
It has been pointed out that the marital deduction incidentally helps the other defendants, even under the executor's construction of the will. An examination of the tables discloses that the marital deduction in effect has become a family deduction, from which all beneficiaries derive benefits. If there had been no marital deduction, the dissident two main defendants each would have received $1,616,648.54, but as a result of the marital deductions each receives $1,842,043.14, an increase of about $226,000 each. Such benefits are not inconsequential.
Under well-established rules of construction every word is to be accorded weight and the meanings to be attributed are not to be bizarre, labored or obscure, but such as conform to the subject matter and the flow of sense which the testator manifests. As to the meaning and intent of paragraph Eighth, the basic intent of the testator is unequivocally manifested by the first paragraph. By the use of the words "all" and "upon," the testator manifested his intention that each beneficiary was to be charged with all taxes upon her or his share and with those taxes alone. As a corollary to that principle the testator intended to give each beneficiary whatever advantage  taxwise  might be incidental to the share he or she receives. The first provision of the second paragraph, that relating to the federal estate tax computed on the value of the whole estate, achieves the same apportionment effect by directing a division of the tax burden which was not automatically accomplished by the statute.
The key word is "taxable." Each beneficiary is to pay the proportion of the whole tax as the taxable valuation of his gift bears to the valuation of the entire taxable estate. The "taxable valuation" of each beneficiary's share is so much of the total value of that share as is used or is the basis in determining the tax and similarly the "taxable estate" is so much of the gross estate as is subjected to taxation. The valuation of each legacy is to be separately *568 considered and the legatee of each legacy is chargeable with so much of the federal tax imposed upon the estate as the taxable valuation of the legacy bears to the entire taxable estate.
The contrary construction avoids testator's plan as expressed in the first paragraph of Eighth. Each beneficiary, under the other defendants' contentions, does not pay that part of the federal estate tax "imposed" on his or her share and for which the share is used as a part basis. Under the marital deduction statute the property which goes to the widow has no taxable valuation since it is not used in the determination of the amount of tax. The taxable value of the widow's share which contributes to the taxable base is none. In re Ginsberg's Estate, 4 Ill. App.2d 138, 123 N.E.2d 739 (App. Ct. 1955).
I conclude that the testator intended (a) that there should be an equal division of the entire residuary estate among the widow, the son and the grandson, and (b) that there should be another primary provision of equal dignity and force with the one fixing equal distributive shares  the principle that each beneficiary should carry his or her own tax burden. Therefore, under the terms of the last will and testament of John A. Roebling no federal estate tax shall be charged to or paid by the widow or be deducted from her part of the residual estate and she, as surviving spouse, shall receive the full benefit of the marital deduction.
Submit judgment.
NOTES
[*] New Jersey transfer inheritance taxes computed using a substantially lower value per share for a large block of nonlisted stock in a closely held corporation, as per indicated position of the New Jersey taxing authorities.
[**] After credit for state inheritance and estate taxes paid.
[1] Counsels' explanation is as follows:

"Under the federal tax statutes, if any portion of the federal estate tax is charged to the widow's share of the estate, an increased federal estate tax will result. This statement rests on the application of two sections of the Internal Revenue Code of 1939: (1) Section 812(e) (l) (A), which allows the estate a deduction of `an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse' and (2) Section 812(e) (l) (E), which requires that this marital deduction be reduced by any federal estate (or New Jersey inheritance) taxes payable out of the surviving spouse's share of the estate. Thus, if Helen Price Roebling pays a portion of the federal estate tax, the marital deduction allowed the estate will be reduced by that amount, and a reduction in the size of this deduction will increase the size of the taxable estate and perforce increase the tax on the estate. If no federal estate tax is chargeable to the widow's share, the marital deduction will be reduced only by the New Jersey inheritance taxes paid by Helen Price Roebling; and, as the marital deduction will be larger, the taxable estate and hence the tax will be smaller. In other words, the larger the marital deduction the lower the tax, and, under the Code, charging the widow's share with a part of the federal estate tax reduces the marital deduction and increases the tax.
"Applying this analysis to the estate as valued by the Internal Revenue Service produces the results stipulated above. Such values give a total gross estate of $15,198,884.00 which, after allowance for debts and administration expenses of $880,657.73, is reduced to $14,318,226.27. The decedent's will makes a specific devise and bequest to his widow and also gives her one-third of the residue of his estate, the gross value of all of which is $4,742,190.09.
"Under the theory that Helen Price Roebling would pay a pro rata share of the federal estate tax, the marital deduction for the estate is computed as follows:

 HPR gross share ............................................ $4,742,190.09
 Deduct:
 N.J. taxes payable by HPR ................ $465,510.53
 Federal estate tax chargeable to HPR ..... 2,075,496.76 2,541,007.29
 ____________ _____________
 Marital deduction ................................. $2,201,182.80

"Under the other theory by which Helen Price Roebling would pay no part of the federal estate tax, the marital deduction is computed as follows:

 HPR gross share ............................................ $4,742,190.09
 Deduct:
 N.J. Taxes payable by HPR .............................. 425,990.00
 _____________
 Marital deduction ................................. $4,316,200.09

In both cases it can be seen that the marital deduction becomes the net share Helen Price Roebling takes, i.e., her share after all taxes chargeable against it.
"Carrying these computations one step further, the net taxable estate on each theory of this action is computed as follows:

 1 2
 HPR pays no part of HPR pays proportionate
 federal estate tax share of federal
 estate tax
 Adjusted gross estate ....... $14,318,226.27 $14,318,226.27
 Deduct:
 Marital deduction ......... 4,316,200.09 2,201,182.80
 ______________ ______________
 Net taxable estate .......... $10,002,026.18 $12,117,043.47

And, completing the calculations, the federal estate tax on each of these net taxable estates is:

 1. 2.
 Federal estate tax .......... $4,976,231.92 $6,266,596.51

The difference in the federal estate taxes is therefore $1,290.364.59."