Adele H. DODD and William A. Dodd, Executors of the Estate of John A. Dodd, Deceased

v.

UNITED STATES of America, Appellant.

No. 14860.

United States Court of Appeals Third Circuit.

Argued Dec. 7, 1964.

Decided May 11, 1965.

Rehearing Denied June 22, 1965.

William A. Friedlander, Dept. of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., Vincent J. Commisa, Asst. U. S. Atty., on the brief), for appellant.

Benjamin P. DeWitt, Short Hills, N. J. (Sidney Pepper, New York City, on the brief), for appellees.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

This case involves the question whether a surviving spouse's share in the residuary estate of the testator shall bear a proportionate part of the federal estate tax.

The testator, a resident of New Jersey, died on November 18, 1955, leaving a will dated May 6, 1948, one month after the marital deduction was adopted by Congress.

The will directed the payment of testator's debts and funeral expenses, devised his residence to his wife and bequeathed to her all his household goods, furnishings and effects, automobiles, wearing apparel and jewelry and personal effects. It appointed testator's wife and two sons as executors [1] and directed that they should not be required to give bond. The residue of the estate was disposed of in the following provision: "V. I direct that all the rest, residue and remainder of the property, real and personal, of whatsoever nature and wheresoever situated, which at the time of my death shall belong to me or be subject to my disposal by will or otherwise, be divided into two equal parts. I give, devise and bequeath one of such two equal parts to my wife, ADELE H. DODD. I direct that the second equal part be divided into as many equal shares as I have children and issue of deceased children leaving issue me surviving and I give, devise and bequeath one of such equal shares to each child of mine, who shall survive me and one of such equal shares to the surviving issue of each deceased child of mine in equal parts, per stirpes and not per capita."

The executors calculated the federal estate tax by deducting the widow's one-half share of the residuary estate without diminution for any part of the federal

---

1. As the case appears here, the executors who have qualified are the wife and one son.

estate tax. The government determined the tax liability of the estate by attributing the estate tax to the residue and charging the widow's share with its pro rata portion. The Commissioner assessed a deficiency of $17,351.79, plus interest, against the estate, as the additional estate tax resulting from the reduction of the tax-exempt marital deduction. This amount was calculated by an algebraic formula established pursuant to the regulations, since otherwise "an endless chain of computation and recomputation" would be required. See Dulles v. Johnson, 273 F.2d 362, 369 (2 Cir. 1959).[2] The executors paid the deficiency and brought the present action for recovery of the alleged overpayment. The court below entered a summary judgment in their favor. 223 F.Supp. 785 (D.N.J. 1963).

■ The Internal Revenue Code provides that "in determining" the "value" of the interest passing to a surviving spouse for which the marital deduction is allowed, "there shall be taken into account the effect which" any estate tax "has upon the net value to the surviving spouse of such interest".[3] It thus leaves it to state law to determine whether the marital share is to bear any part of the estate tax. Riggs v. Del Drago, 317 U.S. 95, 98, 63 S.Ct. 109, 87 L.Ed. 106 (1942); Gallagher v. Smith, 223 F.2d 218, 222–223 (3 Cir. 1955); Babcock's Estate v. Commissioner of Internal Revenue, 234 F.2d 837 (3 Cir. 1956). See also 4 Mertens, Law of Federal Gift and Estate Taxation (1959), § 30.08, pp. 664–66. If it does, the "value" of the marital share, and therefore the marital deduction, is to that extent reduced.

■ The New Jersey apportionment statute (L.1950 c. 327, N.J.S. 3A:25–30 et seq., N.J.S.A.), adopted in 1950, is in-

applicable because it is restricted to cases where the will was executed after January 1, 1951. The case is governed, therefore, by the common law of New Jersey. In the leading case of Turner v. Cole, 118 N.J.Eq. 497, 179 A. 113 (E. & A. 1935), it was laid down that unless the will indicates otherwise federal estate taxes are payable out of the residuary estate. The Supreme Court of New Jersey later pointed out in Morristown Trust Co. v. McCann, 19 N.J. 568, 118 A.2d 16 (1955), that the rule of construction of Turner v. Cole is applicable not only where it is impossible to determine with absolute certainty the testator's subjective intent, but also where the terms of the will and the surrounding circumstances leave the court in doubt regarding his "most probable intent". In the McCann case a testamentary provision that any and all inheritance, estate and transfer taxes imposed upon the estate or any part thereof should be paid out of the principal of the residuary estate, was construed to require the residuary estate to bear the burden of federal estate and New Jersey inheritance taxes levied on *inter vivos* gifts made to the defendant, because the circumstances of the gifts and the general provisions of the will indicated the testator's intention that the defendant should not bear the burden of the tax on them. Among the elements which indicated this intention were the testator's expression of his appreciation of the care which the defendant had given him, the provisions he had made for her in his will and the high proportion which the tax represented of the total *inter vivos* transfers compared with its relatively small percentage of the residuary estate. The court said that it was therefore "unnecessary in this case to resort to rules of construction where precedent may assert whatever sanctity it possesses in the law

---

2. This method of calculation has been sustained. Harrison v. Northern Trust Co., 317 U.S. 476, 480–481, 63 S.Ct. 361, 87 L.Ed. 407 (1943); Dulles v. Johnson, 273 F.2d 362, 369 (2 Cir. 1959). See generally 4 Mertens, Law of Federal Gift and Estate Taxation (1959), §§ 30.08, 30.-12, et seq.

3. Internal Revenue Code of 1939, § 812 (e) (1) (E) (i), added by § 361(a) of the Revenue Act of 1948; now Internal Revenue Code of 1954, § 2056(b) (4) (A).

of wills." (118 A.2d p. 20). The modern New Jersey rule therefore searches for the intent which is most probably attributable to the testator and only when the will itself and the surrounding circumstances fail to disclose it does an arbitrary rule of presumption apply.

The presumption that the estate taxes should be borne by all of the residue was laid down in Turner v. Cole, supra, at a time when there was no intruding element against doing so. Presumably the residuary estate was what remained after the testator had made his specific bequests and fairness therefore led to the rule that in the absence of any indication of intention to the contrary, the residue should bear the total estate tax. The reason for a presumption which casts the estate tax on all who share in the residue disappears, however, when a marital deduction is carved out of the residue. A marital provision frequently is made in the form of a share of the residue because the maximum amount allowable as a marital deduction, which is one-half of the adjusted gross estate, is undeterminable when the will is written. A draftsman whose mind is directly fixed on the marital deduction must usually cast the testamentary provision in the form of a share of the residue, or even replace the well-known usage of testamentary draftmanship with tax lawyers' language by providing that the surviving spouse's share shall be a sum equal to a one-half

share of the adjusted gross estate as it is ultimately determined on the final settlement of the estate's liability for federal estate tax.[4]

A marital deduction deals only with a surviving spouse, unique among beneficiaries, one who presumably is the primary object of a testator's bounty and of the same generation as the testator, whose inheritance causes but a temporary postponement of the tax [5] and of the ultimate inheritance by the children. While New Jersey is a common law and not a community property state it is well known that Congress adopted the marital deduction and split income provisions in 1948 [6] to stem the increasing efforts of common law states to secure for their citizens the tax advantages which were available in community property states.[7] We have no doubt that New Jersey would intend its citizens to have the full benefit of the "geographical equalization" which Congress provided by establishing the marital deduction. It would, indeed, be difficult in the usual case, where the proportion of the residue left to the wife does not exceed the allowable marital deduction, to attribute to the testator an intention that his estate should pay an increased estate tax and that his widow's distributable share should be reduced. In such cases there is no place for the operation of the canon of construction which imposed the burden of the estate tax on all who shared in the residue.

4. We do not pause to give a detailed description of such provisions, assuredly unintelligible to most testators, or of the need to deal with assets passing outside the will but includible in the estate for estate tax purposes.

5. United States v. Stapf, 375 U.S. 118, 128–129, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963) ; In Re Reilly's Estate, 239 F.2d 797, 799 (3 Cir. 1957).

6. Revenue Act of 1948, § 301, provided for the splitting of incomes, § 303 instituted the joint income tax returns, § 361(a) added the marital deduction as to estate tax and § 372 made it applicable to the gift tax.

7. The intention was to accomplish "geographical equalization" between these states. See 4 Mertens, Law of Federal Gift and Estate Taxation (1959), § 29.01. The search had reached the bizarre extreme where common law states like Michigan, Nebraska, Oklahoma, Oregon and Pennsylvania (see Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, 55 A.2d 521, 174 A.L.R. 220 (1947)) had sought by statute to make themselves community property states. As the Senate report said, many other states were "waiting to see what Congress will do about the problem of geographical equalization. If the necessary action is not taken there will be a flood of state legislation intended to produce the same results, but doing so in a manner which has most unfortunate consequences. * * *" Senate Report No. 1013, U.S.Code Cong.Serv., 80th Congress, 2d Session, pp. 1163, 1186.

The will in this case was written one month after the marital deduction provision became part of the Internal Revenue law, and the testator died six years later. Under familiar principle, the will is ambulatory and must be read as of the date of decedent's death. Although there is some unreality attending such conceptions it must be assumed that testator was aware of the important marital deduction provisions. At any rate, regardless of his individual awareness, the law will impute such knowledge to him. The will here made the classic devise and bequest to the wife of one-half of the residuary estate, which is the maximum allowable as the marital deduction,[8] and gave the remaining one-half to the children. It is true that if the wife is relieved of the estate tax the children's remaining one-half of the residue will be reduced by requiring it to bear all of the estate tax.[9] But the alternative is either to reduce the share of the children by requiring them to bear the entire but smaller estate tax, or to reduce the wife's share and thus increase the total estate tax. A will written after the marital deduction provision was established, which grants a wife a share of the residue similar to that authorized as the marital deduction is presumably intended to come within that provision. Even if the wife and children were to be considered equally the intended beneficiaries of the testator's bounty, the balance would be overcome by the consideration of reducing the total estate tax. In these circumstances, therefore, we may impute to the testator the intention that his estate and his wife alike should have the fullest benefit of the marital deduction. Moreover, even if it were thought that the testator's "most probable" intention did not appear, and it became necessary to resort to a presumption, the presumption would be that the testator intended his estate to have the full benefit of the marital deduction. It follows therefore that the wife's share of the residue is not to be reduced by requiring it to bear any portion of the estate tax.

There is nothing in the few New Jersey cases that have been decided since the marital deduction was adopted which would indicate that the original common law presumption is still to prevail in cases where a marital deduction is involved.

The government relies on In Re Estate of Green, 76 N.J.Super. 559, 185 A.2d 57 (Union County Ct., Prob.Div.1962), and Morristown Trust Company v. Childs, 128 N.J.Eq. 524, 17 A.2d 559 (1940). In the Green case the will contained no direction regarding the payment of taxes and made no mention of non-testamentary assets which were included in the gross taxable estate. The court therefore allocated the tax burden according to the provisions of the New Jersey apportionment statute. It held that this required the appointee who received the non-testamentary assets to pay to the estate only the proportion which such assets bore to the entire taxable estate and as a result the residue, all of which went to the wife, bore the remainder of the tax. The decision, therefore, was based on the court's construction of the apportionment statute. In the Childs case the charitable remainderman of an *inter vivos* trust claimed a right of

---

8. The taxable estate included specific bequests to the widow and the proceeds of life insurance policies. Their effect on the maximum allowable marital deduction is minimal.

9. This is a mathematical certainty which is not disputed, although the precise amounts by which the widow's distributable share would be increased and the children's diminished have not been presented to us. It would have been desirable if these details appeared in the record and if the proceedings below indicated concretely the status of the administration of the estate in the probate court and the decision made therein. For as we pointed out in Babcock's Estate v. Commissioner of Internal Revenue, 234 F.2d 837, 841–42 (3 Cir. 1956), it is not what the state court may have said in abstract discussion of the rules of state law, so much as its decision concretely applying that law to the facts of the specific case, that is binding on the Federal government in the computation for federal estate tax purposes of the marital deduction.

reimbursement from the life tenants for the estate tax imposed on the trust. The court rejected the claim because the trust instrument clearly showed that the primary purpose of the settlor was to provide income for the life tenants. The charitable remainder, therefore, although itself tax exempt, was held chargeable with a proportionate share of the estate tax. The case, of course, did not deal with an interest of a surviving spouse and there was no occasion to consider the intention of a testator regarding the burden of estate taxes as between a marital share and the shares of other beneficiaries of a residuary estate.

The cases which the government relies on, therefore, are no support for a presumption which in this case would cast on the marital deduction a proportionate share of the estate tax payable out of the residue. There are, in fact, a few New Jersey cases which indicate an unwillingness to apply such a presumption in the face of the marital deduction. In Case v. Roebling, 42 N.J.Super. 545, 127 A.2d 409 (Chan.Div.1956), the court in a comprehensive opinion construed a will written with expert advice in a multi-million dollar estate as requiring that the widow's share, which was entitled to the marital deduction, should not bear any part of the estate tax. The court was influenced by the fact that its construction of the tax clause would relieve the estate of approximately $1,300,000 in additional estate taxes, although it would reduce the distributions to the testator's son, grandson and daughter-in-law. In In Re Burnett's Estate, 50 N.J.Super. 482, 142 A.2d 695 (Bergen County Ct., Prob.Div.1958), the facts were closer to those in the present case. The testatrix left a very large estate and her technically drawn will made no specific provision regarding the payment of federal estate taxes. Although she died in 1956 the will was written in 1943 and therefore was not governed by the New Jersey apportionment statute. The will left one-half of the residuary estate to her husband and the remaining one-half in trust for certain

relatives. The court cited Case v. Roebling, supra, on the incredibility of an intention by the testator to have his estate pay an extremely large additional estate tax and relied heavily on the history and purpose of the marital deduction. It held that the surviving husband's one-half share of the residue should not be charged with any part of the estate tax, saying: "In the absence of a mandatory directive in a will, a surviving spouse's share of the residuary estate should not be required to contribute proportionately to the payment of federal estate taxes when such share qualifies for the marital deduction". (142 A.2d, p. 707).

In our view of the New Jersey law the wife's share of the residue is not required to bear any share of the estate tax.

The judgment will therefore be affirmed.