John E. DAVIS and Wilson L. Davis, Executors of the Last Will and Testament of J. E. Davis, also known as J. Ellsworth Davis, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. No. 726.

United States District Court
D. North Dakota,
Southwestern Division.

Aug. 24, 1966.

Daniel James Chapman, of Rausch & Chapman, Bismarck, N. D., for plaintiffs.

Edward O. C. Ord, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

RONALD N. DAVIES, District Judge.

J. E. Davis, also known as J. Ellsworth Davis, late a resident of Bismarck, North Dakota, died, testate, on June 8, 1959, survived by his widow and four children. His will dated May 29, 1954, was duly admitted to probate in Burleigh County Court, Bismarck, North Dakota, and provided in part:

*FIRST:* I direct that my Executors, hereinafter named, pay all of my just debts, taxes, expenses of last illness, and funeral expenses as soon as possible after my death.

*SECOND:* I hereby confirm a pledge which I have made to the building fund of the Presbyterian Church of Bismarck, North Dakota, in the sum of Five Thousand Dollars ($5,000.00), and I direct and request that my Executors pay the same out of my estate.

*THIRD:* I further direct and request that my son, John E. Davis, shall have an option to purchase and acquire from my estate Ninety-five (95) Shares of stock held by me in the First National Bank of McClusky, North Dakota, at a price of not to exceed Two Hundred Dollars ($200.00) per share, and for that purpose I hereby give unto my said son a period of five years from and after my death in which to exercise the said option.

*FOURTH:* I hereby confirm the fact that my son, John E. Davis, is now the owner of a one-half interest in and to the livestock on the ranch which has been operated under the name of J. E. Davis and Son.

*FIFTH:* I hereby give, devise, and bequeath unto my wife, Helen W. Davis, an undivided one-half interest in and to the residue and balance of my estate, to have and to hold to her and her heirs forever.

*SIXTH:* I hereby give, devise, and bequeath unto my children, John E. Davis, David E. Davis, Wilson L. Davis, and Mary E. Keating, an undivided one-quarter interest each in

the remaining one-half of my estate, to have and to hold to them and their heirs forever.

The decedent's executors filed a Federal Estate Tax Return September 8, 1960, which was later amended October 13, 1960. Following an audit of the return a deficiency was assessed July 5th, 1963, which, together with interest, was paid by the executors. Claim for refund was denied, and this lawsuit followed. The United States has now moved for summary judgment. The issue to be resolved here focuses on the fifth paragraph of Mr. Davis' will. The Government urges that the interest passing to the widow must be reduced by a proportionate share of the Federal estate tax. The Plaintiffs contend that her interest qualifies for the marital deduction under Sec. 2056(a), Internal Revenue Code of 1954, 26 U.S.C.A.

"The Internal Revenue Code provides that 'in determining' the 'value' of the interest passing to a surviving spouse for which the marital deduction is allowed, 'there shall be taken into account the effect which' any estate tax 'has upon the net value to the surviving spouse of such interest'. It thus leaves it to state law to determine whether the marital share is to bear any part of the estate tax. Riggs v. Del Drago, 317 U.S. 95, 98, 63 S.Ct. 109, 87 L.Ed. 106, (1942); Gallagher v. Smith, 223 F.2d 218, 222–223 (3 Cir., 1955); Babcock's Estate v. Commissioner of Internal Revenue, 234 F. 2d 837 (3 Cir., 1956). See also 4 Mertens, Law of Federal Gift and Estate Taxation (1959), § 30.08, pp. 664–66. If it does, the 'value' of the marital share, and therefore the marital deduction, is to that extent reduced." Dodd v. United States, 345 F.2d 715 (3rd Cir., 1965).

"Since the decision in the *Del Drago* many States have enacted apportionment statutes. See Annotation, 37 A.L.R.2d 199. Some States, without the aid of an apportionment statute, have adopted the view that federal estate taxes should be equitably appor-

tioned unless the will provides otherwise. 37 A.L.R.2d 169, 171. However, the majority view is that the burden of federal estate tax ultimately falls on the residuary estate unless the will or a statute provides otherwise. 37 A.L.R.2d 176. Many of the states following the majority rule adopted the rule before the decision in the *Del Drago* case in 1942, at a time when there was uncertainty as to whether the federal estate tax statutes placed the ultimate burden on the residuary estate and at a time when federal estate taxes were less substantial than at present. Our duty in the case now before us is to determine the applicable Minnesota rule, and we are not required to weigh the merits of the conflicting views reflected in the numerous court opinions, many of which are cited in the foregoing A.L.R. Notes." United States v. Goodson, 253 F.2d 900 (8th Cir., 1958).

Thus we look to the law in North Dakota. No cases were found touching upon this issue. The only statutory reference to apportionment of estate taxes is contained in Sec. 57–37–23, North Dakota Century Code. This section, first passed by the North Dakota Legislative Assembly in 1931, S.L.1931, Ch. 282, Sec. 8, provides that any taxes imposed under Chapter 57–37 upon the transfer of the net estate of every decedent "shall be and shall remain a lien upon the property transferred" and that "[i]n the case of a resident decedent, beneficiaries shall share the burden of the tax in proportion to benefits received, unless otherwise provided by will."

This section makes reference only to estate taxes imposed under the chapter and was obviously intended to insure their payment. The North Dakota Supreme Court has not ruled on whether this section would require also that the beneficiaries share the burden of Federal estate taxes in proportion to the benefits received. Thus this Court is confronted with a doubtful question of state law, especially in light of Sec. 57–37–11, N.D. C.C., first passed by the Legislative As-

sembly in 1951, which provides, so far as here pertinent:

"Determination of net estate.—For the purposes of this chapter, the value of the net estate of the decedent shall be determined by deducting from the value of the gross estate the following:

"1. * * *

"2. An exemption to a surviving spouse determined as follows:

"a. An amount equal to the value of any interest in property which passes or has passed from the decedent to his or her surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate, subject, however, to the limitation provided in subdivision h.

* * * * *

"e. In determining, for the purposes of subdivision a of this subsection, the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection, (1) there shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest, and (2) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account.

* * * * *

"h. The aggregate amount of the deductions allowed under this subsection, computed without regard to this subdivision, shall not exceed fifty per centum of the value of the adjusted gross estate or twenty thousand dollars, whichever is the larger. * * *".

There are two approaches to the problem of apportionment. First it may be argued that it would not be equitable to visit any part of the burden against property which was excluded from the taxable valuation of the estate. This carries forward the Federal exemptions and deduction and prorates the tax burden among those beneficiaries whose shares entered into the tax base. The second approach embraces the argument that so far as the distributees are concerned, the estate really consists of what is left after the Federal estate taxes have been satisfied.

It is this second concept that prompted many states to enact apportionment statutes after the ruling in Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106. This Court assumes that North Dakota's Legislative Assembly was aware of the decision in *Del Drago* and that it elected not to pass an apportionment statute relating to Federal estate taxes, nor to change that part of Sec. 57–37–23, N.D.C.C., providing for apportionment of estate taxes "unless otherwise provided by will."

■ The will of J. E. Davis, also known as J. Ellsworth Davis, provided that "my Executors * * * pay all of my just * * * taxes * * * as soon as possible after my death." This must be construed to mean *all* taxes, including estate taxes; and this fact, together with this Court's interpretation of the North Dakota law here applicable, leads to the ultimate conclusion that the widow's marital deduction must bear its proportionate share of the Federal estate tax.

■ In its motion for summary judgment the Government does not rely upon North Dakota statutory law but instead seeks application of the general rule that the burden of Federal estate tax ultimately falls on the residuary estate unless the will provides otherwise, citing United States v. Goodson, 253 F.2d 900 (8th Cir., 1958), and that North Dakota would follow the weight of authority. In support of this theory, the Government contends that under the will "no specific method, fund, bequest or estate

was singled out to bear the burden of taxes."[1]

To accept the Government's theory would be to ignore the first paragraph of the decedent's will as well as to ignore Sec. 57–37–23, N.D.C.C., and even were this done, Dodd v. United States, 345 F.2d 715 (3rd Cir., 1965), would be followed by this Court and would require a contrary result.

■ The Plaintiffs oppose the motion on two grounds, the first being that a trial is necessary to determine the testator's intent. The clear answer to that contention is that:

"As the language of the will is clear and unambiguous, the intent of the testator must be determined from the language itself. It has been contended by some that, even though the language is clear and unambiguous, the intent of the testator must be determined in the light of surrounding circumstances. With this latter view we disagree. * * *" Graves v. First National Bank in Grand Forks, 138 N.W.2d 584 (N.D., 1965).

■ The second ground urged in opposition to the motion is that a final decree of distribution was entered by the County Court of Burleigh County, North Dakota, after all of the heirs, devisees and legatees entered into a written agreement for the distribution of the residue of the estate pursuant to Sec. 30–21–20, N.D.C.C., and that the decree is binding on the Government under Sec. 30–21–06.3.[2]

This second ground also must be rejected since it is "the nature and extent of the interest which passed at the instant of the testator's death, not the interest given by the decree of the Probate Court" that governs. United States v. Mappes, 318 F.2d 508 (10th Cir., 1963); Bookwalter v. Lamar, 323 F.2d 664 (8th Cir., 1963); First National

Bank of Topeka, Kan. v. United States, 233 F.Supp. 19 (D., Kan., 1964).

There being no genuine issue as to any material fact, and the Government being entitled to judgment as a matter of law, the motion of the United States for summary judgment must be, and it is hereby in all things, granted.

---

1. Page 13, Defendant's brief in support of motion for summary judgment.

2. This Court doubts that this section has any application whatever to Sec. 30–21–20, but in any event does not take it into account in determining the result reached in this case.