88 N.J. Super. 278 (1965)
212 A.2d 43
JULE ROBERTS GESNER AND EDWARD ROBERTS, JR., EXECUTORS UNDER THE WILL OF EDWARD ROBERTS, DECEASED, AND INDIVIDUALLY, PLAINTIFFS,
v.
MARIE B. ROBERTS, EXECUTOR UNDER THE WILL OF EDWARD ROBERTS, DECEASED, AND INDIVIDUALLY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 28, 1965.
*279 Mr. Edward F. Merrey for the executors (Messrs. Merrey & Merrey, attorneys).
Mr. Warren Dixon, Jr., for plaintiffs.
Mr. Daniel M. Dwyer for defendant (Messrs. Dwyer, Dwyer & Dwyer, attorneys).
MATTHEWS, J.S.C.
This matter comes before the court on defendant's motion for judgment on the pleadings.
*280 Edward Roberts died testate on March 21, 1964, a resident of Ridgewood, Bergen County, New Jersey. His last will, dated July 15, 1947, was admitted to probate by the Surrogate of Bergen County and letters testamentary were issued to plaintiffs Jule Roberts Gesner and Edward Roberts, Jr., and to defendant Marie B. Roberts, in accordance with the appointments made under the will. Jule Roberts Gesner and Edward Roberts, Jr., are the daughter and son of decedent by a former marriage.
By article Second of decedent's will he gave his home and the contents thereof and any automobiles he might own at his death to his wife Marie B. Roberts, a small clock to his son Edward Roberts, Jr., and all family portraits to his daughter Jule Roberts Gesner. He then provided by article Third as follows:
"THIRD: I give, devise and bequeath all the rest, residue and remainder of my estate of any nature, whether real, personal or mixed and wherever the same may be located, to my wife, Marie B. Roberts, my son, Edward Roberts, Jr., and my daughter, Jule Roberts Gesner, in equal parts share and share alike. It is my suggestion that in any distribution of the residue my son, Edward Roberts, Jr., if he so wishes, shall be allowed to take as part of his share of the estate sufficient stock of Roberts, Cushman & Company so that he may have control of the same."
Prior to testator's death he had disposed of all his stock of Roberts, Cushman and Company, so that the provision of his will relating to the same had no application.
On the basis of independent legal advice sought by plaintiffs individually on the one hand, and by defendant individually on the other, a dispute has arisen as to whether the federal estate tax imposed by the United States of America falls solely on the residuary shares of the children or whether it falls on the residuary shares of the three residuary beneficiaries. Plaintiffs have taken the position that the surviving spouse's share of the residue must contribute proportionately to the federal estate tax payable. The widow contends that since what passes to her qualifies for the marital deduction *281 and reduces the taxable estate pro tanto, her share should be free of the federal estate tax burden, notwithstanding that it is a tax upon the estate and not upon the inheritance.
In approaching the problem of construction submitted here, I observe that the paramount obligation of the court is to reach the probable intent of the testator. Morristown Trust Co. v. McCann, 19 N.J. 568 (1955); Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962).
Plaintiffs argue that since the court is obligated to determine the most probable intent of the testator, it need go no further than the four corners of the will in question, considered in light of the language used and the circumstances existing at the time of the execution of the will. They point out that the obvious extrinsic circumstance existing at the time the will was executed was that no such thing as the marital deduction, found in section 2056 of the Internal Revenue Code, 26 U.S.C.A. § 2056, existed. Considering this circumstance and the provisions of article Third, which, it is contended, indicate absolute equality of treatment with respect to the distribution of the assets of decedent's estate, the result must be that the testator probably intended that all three residuary beneficiaries should contribute to the payment of the federal estate tax.
Defendant argues that the trend of New Jersey decisions handed down since the enactment of the marital deduction provisions of the federal estate tax law, indicates an inclination on the part of our courts to favor a decedent's widow and thus to exonerate her from the payment of federal estate taxes, at least to the extent that the assets of her deceased husband which passed to her qualified for the marital deduction. Defendant cites in support of her argument, In re Gardner's Estate, 35 N.J. Super. 163 (App. Div. 1955); Case v. Roebling, 42 N.J. Super. 545 (Ch. Div. 1956); In re Burnett, 50 N.J. Super. 482 (Cty. Ct. 1958); Dodd v. United States, 223 F. Supp. 785 (D.N.J. 1963), affirmed 345 F.2d 715 (3 Cir. 1964).
*282 All of the cases so cited involved wills which contained specific directions by the testator as to the payment of death taxes, although in Burnett it was determined, in a prior proceeding, that the tax clause there involved did not cover federal estate taxes. See 43 N.J. Super. 534 (Ch. Div. 1957).
In Morristown Trust Co. v. McCann, supra, our Supreme Court established a set of principles which were stated to serve as a guide to fiduciaries and their counsel in administering wills which provide some method for the shifting of burdens of death duties. McCann involved the question of whether a beneficiary (who stood in the position of a daughter to a testator) should be called upon to contribute a portion of the federal estate taxes generated by the inclusion in decedent's gross estate of certain gifts made by decedent to her in his lifetime. The will in McCann provided that all inheritance and estate taxes imposed upon the decedent's estate were to be paid out of his residuary estate. The court, in reversing the judgment of the trial court which held that the beneficiary was bound to contribute her share of the taxes, stated that courts should not be bound by arbitrary and artificial rules of construction in determining such questions, but rather should attempt to ascertain the intent of the testator from the language of his will taken in context with the surrounding facts and circumstances at the time of its execution. It is only when a court is left in doubt by the terms of the will and the surrounding circumstances of the testator's most probable intent that resort is to be made to the numerous rules of construction.
Until the decision in the McCann case, it was generally believed by the bench and bar that a direction by the testator in his will, to the effect that death duties imposed upon his estate should be paid out of his residuary estate, did not include exemption from such taxes which were imposed upon property passing outside of the will. This belief was, in the main, based upon a so-called rule of construction, often characterized as being harsh, established over the years in a series of cases commencing with Gaede v. Carroll, 114 N.J. Eq. 524 *283 (E. & A. 1933), and extending to Vondermuhll v. Montclair Trust Co., 14 N.J. Super. 300 (Ch. Div. 1951).
While McCann involved the construction of a will containing a tax clause, the court also discussed the rules of construction to be followed in those situations where a testator has made no expression in his will as to the payment of death taxes or, having made provision, has made it in such a way as to defy a true understanding thereof. The court pointed out that the unanswered question was determined in Turner v. Cole, 118 N.J. Eq. 497 (E. & A. 1935), where it was held that in the absence of a statute or testamentary direction to the contrary, the federal estate tax was to be satisfied from the persons coming into ownership of the property. In the words of our Supreme Court:
"* * * The effect of the Turner decision, supra, is to lay down a rule of construction which is utilized when a court, in construing a testamentary instrument, is left in doubt as to the subjective intent of the testator. The rule appears to be based upon the assumption that in the normal affairs of life one would have considered the tax consequence and by withholding any direction as to the incidence of the death duties it may be reasonably presumed that the burden was intended to fall where the federal and state law place it. The emphasis of the construction process is thereby shifted from a subjective analysis to an objective standard." (19 N.J., at pp. 573-574)
Hence, in New Jersey it has long been accepted that absent a contrary directive in the will, the residue of the estate bears the burden of the estate tax. The rule as accepted, however, was established at a time when the precise issue presented in this case was unknown. It may be said, therefore, that the principle enunciated in Turner v. Cole must be regarded as remaining valid insofar as it goes. Does it, however, answer and control the question presented here?
The marital deduction provisions of the Internal Revenue Code became effective during the spring of 1948, almost a year after the execution of Mr. Roberts' will. It is carried over into the present Internal Revenue Code as section 2056 of the Code of 1954. Its basic provisions having remained unchanged, generally, it provides for a deduction from the *284 gross estate of a decedent of an amount equal to the amount of any property which passes to the surviving spouse, up to a maximum of 50% of the adjusted gross estate. The provisions go on to state that in valuing the share passing to the surviving spouse, the effect of the federal estate tax, if any, must be taken into account. Thus, if the share of the surviving spouse is liable for any part of the federal estate tax, the value of the share of the surviving spouse is reduced, and the marital deduction is accordingly reduced, thereby causing a corresponding increase in the total tax payable by the estate. On the other hand, if the surviving spouse's share is not liable for any portion of the tax, the estate benefits from the full marital deduction, resulting in a lower total tax.
Nowhere in the Internal Revenue Code is found any provision covering the liability of the surviving spouse's share for any portion of the tax. The Supreme Court of the United States has determined that the question of impact of federal taxes, as opposed to taxability, is left to determination by the courts of the several states. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).
Without attempting to set forth a definitive history with respect to the adoption of the marital deduction provisions of the Code, a brief observation with respect to the reasons leading to the adoption seems pertinent. As noted heretofore, the general provisions of section 2056 were first introduced into the federal estate tax law by the Revenue Act of 1948. The new and long awaited concept of the marital deduction was said to be designed to accomplish a geographical equalization of the federal estate tax. For many years, persons who were domiciled in community property states had enjoyed a peculiar tax advantage over those domiciled in common law states, in that only one-half of community property was deemed subject to federal gift and estate taxes, since, under the law of the former jurisdictions, each spouse owned one-half interest in such property. An attempt was made by amendments, adopted in 1942, to set up special rules to bring about an equality between common law and community property *285 states. These attempts failed. In response to public demand, several common law states sought by statute to make themselves community property states. These efforts, needless to say, caused chaos in many of those jurisdictions. It was in order to correct these inequalities that Congress addressed itself to and subsequently enacted the marital deduction provisions of the Internal Revenue Code. In order to assure that the marital deduction provisions would produce substantially the same results in common law states as those which had been enjoyed in community property states, the marital deduction provisions adopted contained certain conditions with respect to the deduction. A good example of these conditions may be found in the Terminable Interest Rule, which was included as section 2056(b)(1) of the Internal Revenue Code of 1954. It was against this background of the attempt to achieve geographical equality with respect to the federal estate tax that the Congress left the question of the ultimate burden of the tax to local law.
The cases relied upon by defendant, which have been cited above and which indicate a tendency by the courts of this State to sustain the exempt status of a widow with respect to the ultimate burden of federal estate taxes, may be said to be grounded on three basic assumptions. The first flows from the legislative history of the marital deduction itself. Since its purpose was to equalize the tax burden in common law and community property states, and since no tax would be payable on the surviving spouse's share in community property states, no tax should be payable by the surviving spouse in this State, as a common law state.
The second ground rests on the presumed intent of the testator. Under this ground it is assumed or presumed, if you will, that it is an obvious and normal trait of nature to minimize death taxes. Since it is difficult, if not impossible, to impute to a testator an intention to increase the over-all taxes payable on his estate, the presumed intent is to the contrary.
The third reason rests upon the belief that each segment of the estate ought to bear its own tax burden. Since no tax is *286 generated by the surviving spouse's share of the estate, such share should be free of tax. No tax being paid on the interest itself, the recipient should not be required to pay the tax of others. This third reason, of course, presupposes a spouse's share which otherwise qualifies for the marital deduction.
These three assumptions may be found explicitly or implicitly expressed in the cited New Jersey cases. It is true that in Turner v. Cole, supra, Mr. Justice Heher, writing the opinion for the court, specifically rejected the so-called theory of equitable apportionment among the beneficiaries of a decedent's estate with respect to federal estate taxes, based upon their participation in the estate. The portion of the opinion pertinent to this point reads as follows:
"There are cases which lay down the rule that `every portion of the estate should bear its proportionate part of the tax, subject, however, to the right of the decedent to provide by will out of what portion of his estate the tax should be paid.' Hampton's Adm'rs v. Hampton, 188 Ky. 199, 221 S.W. 496, 10 A.L.R. 515. And there is a line of cases which hold that the federal estate tax should not all be imposed upon the residuary legatee, unless the will so provides, but should be prorated among the recipients of the testator's bounty. Williams v. State, 81 N.H. 341, 125 A. 661 [39 A.L.R. 490]; Foster v. Farrand, 81 N.H. 448, 128 A. 683; Fuller v. Gale, 78 N.H. 544, 103 A. 308. These latter cases proceed on the theory that `if there is no will and the estate is divisible among several heirs, the share of each is necessarily depleted pro rata by the tax.' Williams v. State, supra. The Hampton case, supra, is grounded upon the hypothesis that the congress `did not intend to discriminate between the heirs and distributees,' but evinced a purpose that `every portion' of the estate should bear a pro rata share of the tax burden, unless the decedent by will makes other provision. This case is not, in our opinion, soundly based; we find no such legislative purpose expressed in the statute in question, nor is it fairly to be implied.
The estate tax, as pointed out, is imposed upon the transfer of the `net estate.' 26 U.S.C.A. § 1092. It is required to be paid, one year after the death of the deceased, by the executor or administrator. Ibid. § 1097. The statute contains no direction for the apportionment of the duty among the legatees, devisees or distributees; rather the contrary. The tax is to be paid out of the residuum before distribution. It is expressly provided that if the tax, or any part thereof, `is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by *287 the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this chapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax will be paid out of the estate before its distribution.' Ibid. § 1114. The design of the Congress was clearly to levy a duty `on the estate and not on the particular devises, legacies or distributive shares.' Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N.E. 265 [266, 7 A.L.R. 696]. See, also, In re Hamlin, 226 N.Y. 407, 124 N.E. 4 [7 A.L.R. 701]." (118 N.J. Eq., at pp. 501-502)
Of course, Turner v. Cole, supra, was decided 13 years prior to the enactment of the first marital deduction provision of the federal estate tax law. It cannot be regarded as controlling the question before this court.
In Dodd v. United States, supra, Judge Freedman, writing the opinion for the United States Circuit Court of Appeals for the Third Circuit, which affirmed Judge Wortendyke, observed:
"The presumption that the estate taxes should be borne by all of the residue was laid down in Turner v. Cole, supra, at a time when there was no intruding element against doing so. Presumably the residuary estate was what remained after the testator had made his specific bequests and fairness therefore led to the rule that in the absence of any indication of intention to the contrary; the residue should bear the total estate tax. The reason for a presumption which casts the estate tax on all who share in the residue disappears, however, when a marital deduction is carved out of the residue. A marital provision frequently is made in the form of a share of the residue because the maximum amount allowable as a marital deduction, which is one-half of the adjusted gross estate, is undeterminable when the will is written. A draftsman whose mind is directly fixed on the marital deduction must usually cast the testamentary provision in the form of a share of the residue, or even replace the well-known usage of testamentary draftmanship with tax lawyers' language by providing that the surviving spouse's share shall be a sum equal to a one-half share of the adjusted gross estate as it is ultimately determined on the final settlement of the estate's liability for federal estate tax.
A marital deduction deals only with a surviving spouse, unique among beneficiaries, one who presumably is the primary object of a testator's bounty and of the same generation as the testator, whose inheritance causes but a temporary postponement of the tax and of the ultimate inheritance by the children. While New Jersey is a common *288 law and not a community property state it is well known that Congress adopted the marital deduction and split income provisions in 1948 to stem the increasing efforts of common law states to secure for their citizens the tax advantages which were available in community property states. We have no doubt that New Jersey would intend its citizens to have the full benefit of the `geographical equalization' which Congress provided by establishing the marital deduction. It would indeed be difficult in the usual case, where the proportion of the residue left to the wife does not exceed the allowable marital deduction, to attribute to the testator an intention that his estate should pay an increased estate tax and that his widow's distributable share should be reduced. In such cases there is no place for the operation of the canon of construction which imposed the burden of the estate tax on all who shared in the residue." (345 F.2d, at p. 718)
Judge Freedman's reasoning is appealing, considered in the light of Turner v. Cole itself, which placed the construction process on an objective basis rather than subjective analysis. The objective basis thus adopted, certainly, is more consonant with the probable inclination of a person of means with respect to the taxability of his estate.
The result contended here for the widow may also be supported by resort to the adoption of a theory of partial equitable apportionment with respect to federal death duties in the case of a surviving spouse who is given assets of a decedent's estate, qualifying for the marital deduction under a will which contains no direction with respect to the burden of federal estate taxes. While it is true, as was stated by Mr. Justice Heher in Turner v. Cole, that the federal statute contains no direction for the apportionment of the duty among legatees, devisees or distributees, the statute does, in effect, provide for the creation of a special class of beneficiary by granting the marital deduction to a surviving spouse.
It would seem, then, that the Congress, in granting to the states the right to determine where the burden of federal estate taxes should lie, implicitly expected that common law states such as ours would determine either by legislation or judicial decision that the full benefit of the marital deduction would be accorded where applicable to the surviving spouse. Such a result can only be achieved by recognizing that the *289 surviving spouse's share which qualifies for the marital deduction creates no tax liability for the estate. Should the surviving spouse's share come to him or her under a general residuary clause, assuming no testamentary instruction as to tax burden, it would be inequitable to require such surviving spouse to bear any burden of the tax imposed on the remainder of the estate upon which the tax is levied.
The adoption of such a rule does not do violence to the generally established law with respect to the nature of a residuary estate. In Berger v. Burnett, 95 N.J. Eq. 643, 646 (E. & A. 1923), it was held that the residue of a testator's estate is what is left after the payment of all debts, legacies, expenses of administration and other proper charges and commissions. This definition has generally been accepted as a true definition of the residue of a decedent's estate. There is some authority to the effect that a residuary estate is computed after deducting the elements heretofore mentioned, together with all taxes due on the estate. See 5 (N.J. Practice Clapp, Wills and Administration), § 226, p. 384. There is, however, no judicial authority for this statement. It would seem that the question as to whether the residue is to be calculated after deduction for the payment of federal estate taxes is dependent upon the identity of the recipients of the residuary estate. If the surviving spouse be one of them, and there be no direction for the payment of federal estate taxes, to the extent that his or her share shall qualify for the marital deduction, such share shall not be considered as a portion of the residuary estate. The exclusion of the surviving spouse's share under this rule may be supported by the principle that it constitutes a general legacy. See Busch v. Plews, 12 N.J. 352 (1953); In re Low, 103 N.J. Eq. 435 (Prerog. 1928).
There remains to be answered the argument of plaintiffs that the will of the decedent here manifests a dominant testamentary intent that the widow, son and daughter should take equal distributive shares under the will. I might observe that if the testator really intended this result, it would have *290 been a simple matter for him to direct the payment of taxes out of his estate and the division of the balance into three equal shares. This he did not do. No cases have been cited by plaintiffs to support the argument that a clause providing for the division of a residuary estate into three equal shares manifests probable testamentary intent that there should be an equal division of the tax burden among such beneficiaries regardless of their status. The argument does not comport with the probable intent of a person providing for the distribution of his wealth after his death. In this action, acceptance of plaintiffs' theory will visit upon the estate an additional estate tax of approximately $18,000 and reduce the widow's share by $75,000. An equal division of assets does not necessarily mean an equal tax burden. In re Wahr's Estate, 370 Pa. 382, 88 A.2d 417 (Sup. Ct. 1952); cf. Case v. Roebling, supra; In re Audenried's Estate, 376 Pa. 31, 101 A.2d 721 (Sup. Ct. 1954).
For the foregoing reasons, defendant's motion for judgment on the pleadings is granted without costs to either party.