91 N.J. Super. 255 (1966)
219 A.2d 885
JULE ROBERTS GESNER AND EDWARD ROBERTS, JR., EXECUTORS UNDER THE WILL OF EDWARD ROBERTS, DECEASED, AND INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
MARIE B. ROBERTS, EXECUTOR UNDER THE WILL OF EDWARD ROBERTS, DECEASED, AND INDIVIDUALLY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1966.
Decided May 13, 1966.
*257 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Warren Dixon, Jr. argued the cause for appellants.
Mr. Daniel M. Dwyer argued the cause for respondent (Messrs. Dwyer, Dwyer & Dwyer, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This case involves a controversy between a testator's widow and his children by a prior marriage as to whether she should share the burden of federal estate taxes with the children, all three being equal beneficiaries of the residuary estate left under the will. The trial court held in favor of the widow, relying principally upon the marital deduction provisions of the federal tax code. On the particular set of facts here presented we disagree, and reverse.
*258 Testator, apparently a successful businessman who at his death in 1964 left a gross estate, including insurance, of about $925,000, made his will in 1947, about six months after marrying defendant. The testament was simple. In material part, after providing for payment of debts and funeral expenses, it left a $34,500 home and contents thereof to the wife, certain personal objects of small value to the children, and then declared:
"THIRD: I give, devise and bequeath all the rest, residue and remainder of my estate of any nature, whether real, personal or mixed, and wherever the same may be located, to my wife, MARIE B. ROBERTS, my son, EDWARD ROBERTS JR., and my daughter, JULE ROBERTS GESNER, in equal parts share and share alike * * *."
The residuary beneficiaries were made co-executors.
Since testator died subsequent to the effective date of the 1948 amendments of the federal revenue code enacting the marital deduction provisions of the federal estate tax law this estate became entitled to a deduction of the one-third share of the residuary estate passing to the wife under the will (the maximum such permissible deduction being 50% of the value of the adjusted gross estate). 26 U.S.C.A. (1954 Internal Revenue Code) § 2056. The controversy in the present case implicates the circumstance that the federal tax act reduces the marital deduction by the amount of any inheritance or estate tax, including federal estate taxes, to which the share of the qualifying spouse is subject, thus increasing the estate tax. 26 U.S.C.A. § 2056(b) (4). The computation for that purpose is made by algebraic formula set forth in the regulations.[1]
Accordingly, here, if defendant-wife's share in the residuary estate is made subject to payment of a pro rata portion of the federal estate tax, the amount of that tax will rise from about $150,000 to about $165,000, according to plaintiffs' *259 representations to the court. Under the trial court's judgment defendant would pay no part of the tax and plaintiffs would pay about $75,000 each. Under our reversal the widow and each child will share the burden of the tax to the extent of about $55,000 each.
Preliminarily, it may be noted that the so-called apportionment statute, N.J.S. 3A:25-30 et seq., does not affect this litigation for two reasons: (1) the will was executed prior to January 1, 1951, N.J.S. 3A:25-38; and (2) the act applies only to property passing outside, not under the will, N.J.S. 3A:25-30, subd. d., 3A:25-31; and see National State Bank of Newark v. Nadeau, 57 N.J. Super. 53, 56, 62 (App. Div. 1959).
The problem here presented should be approached, in the first instance, on the basis of the fundamental concept that the courts seek to effectuate the intent of the testator. That philosophy has been strongly reinforced by recent decisions. In re Cook's Estate, 44 N.J. 1 (1965); Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962). Thus, if we had express provisions in the will specifying whether or not the widow should participate in payment of the tax, they would control. See Case v. Roebling, 42 N.J. Super. 545, 559, 560 (Ch. Div. 1956), where the court found the directions of the will on the same issue controlling. Absent such provision in the will, our cases indulge the presumption that federal estate taxes, being excises on the passing from the decedent of his interest in the property rather than on the privilege of the beneficiary of succeeding to that interest, are payable along with debts and administration expenses out of the residuary estate prior to its distribution. Turner v. Cole, 118 N.J. Eq. 497, 501-502 (E. & A. 1935). The rule was reiterated in Morristown Trust Co. v. McCann, 19 N.J. 568, 573 (1955), the opinion in which is notable for the fact that in a case where a tax apportionment provision of a will was not clear the court was influenced by the circumstances attendant upon the making of the will and the *260 nature of the decedent's relationships with the parties affected as casting light upon his hypothetical intent.
It should be noted, and with some emphasis in view of the nature of defendant's arguments, that it is thoroughly settled that the federal estate tax law is, with minor qualifications,[2] quite unconcerned with the ultimate incidence of estate tax burdens as between legatees, devisees and beneficiaries of decedents' estates, inter sese, being content to permit local state law, whether by statute or judicial decisions, to settle such questions. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).
In the instant case, accordingly, if no special argument contra is maintainable because of the peculiar nature of the marital deduction tax law provisions, and there being no directory tax clause in the will, the routine application of the principles mentioned above would require defendant as a residuary legatee along with plaintiffs to share with them in the burden of payment of the estate tax. That would occur automatically with the payment of the tax by the executors before distribution of the net remaining residue among the devisees thereof. Such a result, moreover, would seem to accord with the intent of the testator in leaving the residuary estate to the three named beneficiaries "in equal parts share and share alike." This is language seemingly indicative of an intent that the wife and the children of the prior marriage should take exactly equal net shares in the residuum  a result not effectuated by the decision in the Chancery Division. Possibly significant in this connection is the fact that these children could not have been regarded by testator as having a natural expectation of inheriting ultimately from defendant as she is not *261 their mother.[3] We note further that other evidence of background circumstances offered by the parties strikes us as of little or no probative weight on the intention of the testator concerning the particular question presented.
We thus come to the question whether there is something about the marital tax deduction that should in and of itself carry with its incidence in a particular case a presumption that despite no such specification in the will a spouse sharing in the residuary estate should be relieved of the burden of payment of any part of the estate tax. The major reliance by defendant is on the supposed history of the marital deduction as intended by Congress "to equalize the tax burden in common law and community property states, and since no tax would be payable on the surviving spouse's share in community property states, no tax should be payable by the surviving spouse in New Jersey." We regard this approach as fundamentally wrong. Certainly the federal tax advantages, both income and estate, inhering in the community property concept, were influential in moving Congress to adopt both the joint return for the personal income tax and the marital deduction in relation to estate taxes. But insofar as estate taxes are concerned Congress intended by the marital deduction device not necessarily a benefaction to spouses but to estates. In In re Kantner's Estate, 50 N.J. Super. 582, 587 (App. Div. 1958), we described the marital deduction legislation as affording "a method of substantial reduction of federal estate taxes." The tax saving incident to a marital deduction belongs to the estate only, insofar as the design and operation of the taxing statute is concerned. It remains completely within the testator's volition how much of the potential minimization of the estate tax his estate is to enjoy by use of the marital deduction.
*262 Some testators, though carefully advised as to the marital deduction, deliberately refrain from providing in their wills for the maximum marital deduction possible under the act and thus eschew maximum estate tax savings because they do not wish to give their surviving spouses that proportion of unqualified proprietary interest in the assets of the estate required to do so, having in mind other objects of their testamentary concern and bounty. Indeed, the act expressly contemplates that testators may not necessarily wish to relieve their spouses of bearing a share of the estate tax notwithstanding the incidence of the marital deduction when it provides, as noted above, that the amount of marital deduction is reduced to the extent that the surviving spouse does pay inheritance or estate taxes. Congress was not concerned with any testamentary choice as to ultimate incidence of the tax on the spouse in any particular case. It was content by enactment of the marital deduction to make the tax saving available. Whether it would be used, or to what extent, was up to the individual testator.
Apart from the foregoing, it is clear from Riggs v. Del Drago, supra, that in legislating the estate tax Congress had no purpose or design to interfere with local state law as to the right and power of a testator to decide how his estate, either before or after taxes, was to be distributed, or with state law for the ascertainment of his intent with respect thereto. The enactment of the marital deduction effects no change in that regard whatever.
Thus, a testator obviously having the right to take or reject as much of the estate tax saving available via the marital deduction as he may choose, it should make no difference to a court construing a will whether, in order to accomplish his aim as to the comparative net portions of his estate to be left to the spouse as against other objects of his bounty, the testator does so by leaving the spouse any particular share of the estate less than the 50% maximum, or by drawing a tax apportionment clause expressly stating his intent, or by letting the local constructional law take its normal course as to apportionment *263 of the burden of the tax against the spouse when her share is given out of the residuary estate. The judicial problem in each case is simply the ascertainment of testator's intent as to the net relative shares of the estate after taxes to be enjoyed by his several beneficiaries including the spouse. That objective is not promoted by ascribing unreal probative weight to the statutory character of the marital deduction as founded, technically, upon the amount of the estate which passes to the spouse under the will (or in some cases outside it).
The argument in favor of relieving the spouse of a share of the tax burden is also advanced on the grounds that the taxing statute encourages the making of provisions for spouses in wills and that since the amount of the marital deduction "generates no tax" it is inequitable that the widow should pay any part of it. Both of these contentions are shown to be unsound by the analogy of the judicial treatment of charitable devisees in respect of relative sharing of tax burden in the face of the deductibility of gifts to charities for estate tax purposes. In Young Men's Christian Assn. of Columbus, Ohio v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924), a testatrix after first providing for the payment of debts and funeral expenses and then making certain specific legacies gave the "rest, residue and remainder" of her estate to certain named charities qualifying for deduction for estate tax purposes. On application for instructions as to whether the estate tax should be paid from the specific legacies or the residual estate the Ohio courts instructed the executor to make payment from the residue. The Supreme Court granted certiorari to the charities on the contention that the local state result had deprived them "of a Federal right of exemption from the tax, intended to be secured to them" by the federal tax act. But the Court ultimately rejected the contention and affirmed the judgment of the Ohio courts. After pointing out that the estate tax was a death duty as distinguished from a legacy or succession tax the court said:
*264 "Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death. It said to him: `If you will make such gifts, we'll reduce your death duties and measure them not by your whole estate, but by that amount, less what you give.' * * *
There is nothing in subdivision (3) of section 403 which exempts the recipients of altruistic gifts from taxation; it only requires a deduction of them in calculating the amount of the estate which is to measure the tax. It exempts the estate from a tax on what is thus deducted just as subdivision (4) exempts in terms the estate from taxation on its first $50,000; but this does not operate to exempt any legatee who may be entitled to the first $50,000 in the distribution from deduction to contribute to the tax ultimately imposed, if by the law of the state such should be its incidence.
It was wholly within the power of the testatrix to exempt her altruistic gifts from payment of the tax by specific direction to her executor if she chose. It must be presumed, when she failed to exercise the power, that she intended the incidence of the tax to be where otherwise by law it must be, and therefore that it was her purpose that her residuary legatees were to receive all that was left after paying all charges, including this tax, out of her estate. * * * It is hardly true to say that, under the judgment of Ohio courts these residuary gifts are taxed. The gifts are and were intended by the testator to be indefinite in amount, and to be what was left after paying funeral expenses, attorney's fees, executor's compensation, debts of the decedent, and taxes. These donees do not pay the taxes any more than they pay the funeral expenses, the lawyers, the executors, and the testator's debts." (at pp. 50, 51, 44 S.Ct., at p. 292).
See Thompson v. Wiseman, 233 F.2d 734, 739 (10 Cir. 1956), where it was similarly deemed persuasive in a case involving a wife's claim for immunity from contribution towards estate tax that a charitable devisee gets no such relief if the will does not grant it.[4]
It is thus apparent that Congressional intent, if any, by the marital deduction to encourage substantial bequests to spouses *265 does not bear at all upon the problem here before us for solution.
Turning to the particular testator who drew the will now under construction for clues as to intent, it is impossible realistically to hypothesize a purpose to maximize the estate tax saving by use of the marital deduction since that feature of the estate tax law was not in existence when the will was drawn. Ascertainment of intent is normally sought on the basis of circumstances obtaining when the will was drawn. In re Armour's Estate, 11 N.J. 257, 269-270 (1953). And were it appropriate to look to circumstances between the making of the will and the testator's death one might venture the thought that a successful businessman like testator might have become aware of the marital deduction provisions some time during the 16 years after their enactment preceding his death and draw the inference that his failure to increase the proportion of the estate given his wife under the will to the amount needed to accomplish the maximum estate tax saving indicated he was less interested in gaining maximum tax savings for the estate than in maintaining net ultimate parity in the testamentary shares of the wife and children in the residuary estate.
We do not give the prior New Jersey cases on this question the weight in favor of defendant's position which she claims for them. The leading decision, Case v. Roebling, supra (42 N.J. Super. 545) (per Judge, now Mr. Justice, Schettino), is expressly based on the grounds that (1) the tax apportionment clause in the will was clearly construable to exempt the widow's share from contribution to the tax, and (2) not to relieve the widow would result in an increase of the estate tax to the extent of almost $1,300,000 (a 26% increase in the tax, and amounting to 9% of the adjusted gross estate). This, to the Roebling court, was not a reasonably conceivable intent to impute to the testator (at p. 566). In the present case neither of these factors obtains. There is no tax clause. And requiring the widow to share in payment of the tax increases it only *266 10% and by an amount which is only some 1.7% of the adjusted gross estate.
In re Gardner's Estate, 35 N.J. Super. 163 (App. Div. 1955), was a case clearly dependent for result on an unambiguous tax clause placing the burden of payment on others than the spouse. In re Burnett's Estate, 50 N.J. Super. 482 (Cty. Ct. 1958), was a decision favoring a surviving spouse, also influenced by the substantiality of the increase in estate tax ($350,000) resulting if the spouse were not exempted from contribution. The opinion in that case quite correctly states:
"It is clear from the above cases that New Jersey has not decided that the mere fact that a residuary legatee's share qualifies for the marital deduction warrants the conclusion that it is not amenable to paying its proportionate share of the burden federal estate taxes impose on the residuary estate." (at p. 495).
But the result thereafter arrived at appears influenced by the erroneous and contradictory observation (at p. 499) that "Any doctrine which charges the deductible marital share of an estate with federal taxes thwarts the intent of Congress by destroying parity between common law and community property." (See the discussion supra.)
We find more accurate the observations of Judge Fulop for the Union County Court in In re Estate of Green, 76 N.J. Super. 559 (1962), pertinent here although made in the course of solution of a different type of issue:
"Here the widow is the residuary legatee. She gets the residue, whatever it may be. Since it is less than half of the taxable estate, the marital deduction is less than the maximum allowed. But the law does not require a spouse to leave a full one-half of his estate to the surviving spouse and, if the testator has not done so, the amount of the marital deduction is reduced accordingly. When the gift to the spouse is of the residue, she takes only what is left after payment of proper charges including taxes chargeable against the residue." (at p. 569)
Defendant and the trial court place great reliance on the recent decision in Dodd v. United States, supra (345 F.2d *267 715), which ruled adversely to the Government's estate tax claim against the Dodd estate founded upon the position that the correct tax was greater than reported by the executors, in turn posing the question whether the testator's wife was properly relieved by the executors of liability for estate taxes under a will which made her recipient of one-half of the residuary estate, the children of the couple being given the other half. The court purported to be applying New Jersey law. There was no tax apportionment clause in the will.
In deciding the case in favor of the estate the court was much influenced by the fact that the will was drawn shortly after the adoption of the marital deduction provisions of the federal act and that it contained "the classic[5] devise and bequest to the wife of one-half of the residuary estate which is the maximum allowable as the marital deduction." (at p. 719) In the case at hand, as already noted, the testator could not have contemplated the marital deduction when drawing his will and the amount of the marital share was substantially less than that permitted for attainment of maximum tax savings. Moreover, the adversary interests in Dodd were the children of both the decedent and the surviving spouse, a situation not obtaining here. Finally, the language of the instant will is susceptible of an inference for absolute equality in net distributable shares more readily than that of the will in Dodd. Thus, Dodd is distinguishable in substantial respects from the situation here and we need intimate no view as to the correctness of the result there.
However, we do not agree with so much of the opinion in Dodd as may be read to suggest that in all cases where the testator's "most probable" intent does not appear, resort should be had to a "presumption" that the testator intended his estate to have the full benefit of the marital deduction, *268 and thus that he wished to relieve the surviving spouse of any share of the burden of the tax even though she was a residuary beneficiary. We have already hereinabove indicated a basis for the entirely reasonable assumption that in some, perhaps many, cases a testator might not necessarily desire such relief to the spouse to accompany a benefaction to her qualifying for the marital deduction. We prefer the position that no such "presumption" should attach in these cases but that each should be decided on the basis of whether the totality of the facts and circumstances bearing upon the testator's intent, including the language of the will, justifies departure in the particular case from the ordinary rule that estate taxes are to be borne by the residuary estate.
Decisions in other jurisdictions on these issues are found not particularly helpful in the light of differing state statutes as to descent, distribution and apportionment, and differing state adjudications as to the normal rule for order of satisfaction of estate taxes out of estate assets.
In the present case we see no reason for not following the ordinary settled New Jersey rule discussed above, that absent a contrary direction in the will, federal estate taxes should be deducted before calculation and distribution of the residuary estate, even to the wife. We are influenced by the language of the will, the relationship of the parties to each other and to decedent, the date of the will in relation to that of adoption of the marital tax deduction, the proportionate share of the estate devised to the wife (as compared with the maximum marital deduction), and the relative insubstantiality of the increase in estate tax both absolutely and in proportion to the amount of the adjusted gross estate resulting from a conclusion that the defendant should share in the burden of the tax.
Reversed.
NOTES
[1] An attack upon the formula was rejected in Harrison v. Northern Trust Co., 317 U.S. 476, 481, 63 S.Ct. 361, 87 L.Ed. 407 (1943).
[2] By 26 U.S.C.A. § 2206, 2207, unless the testator otherwise directs by will, the executor may recover pro rata share of estate tax from life insurance beneficiaries and recipients of property under powers of appointment, respectively, where such insurance or property was includable in gross taxable estate on which a tax was paid.
[3] Not applicable here, accordingly, is the full sweep of the observation in Dodd v. United States, 345 F.2d 715, 718 (3 Cir. 1965), that ordinarily inheritance by a wife, under the operation of the marital deduction, "causes but a temporary postponement of the tax and of the ultimate inheritance by the children."
[4] And the analogy gains strength from the fact that the charitable deduction is reduced, just as in the case of the marital deduction, to the extent that estate taxes are payable out of it. 26 U.S.C.A. § 2055 (c); Harrison v. Northern Trust Co., supra (317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407).
[5] The clause was not so "classic." To better qualify for the maximum deduction it should have expressly negated deduction of estate or inheritance taxes in arriving at an adjusted gross estate by which the one-half share devised would be measured. See, e.g., In re Kantner's Estate, supra (50 N.J. Super., at p. 585).