129 N.J. Super. 276 (1974)
322 A.2d 860
IN THE MATTER OF THE ESTATE OF JERRY M. MARKS, DECEASED.
Superior Court of New Jersey, Hudson County Court, Probate Division.
June 21, 1974.
*278 Messrs. Zucker, Lowenstein, Gurny, Facher and Zucker, attorneys for plaintiff Russell Marks (Mr. Saul J. Zucker appearing).
Messrs. Weltchek, Prupis & Ritz, attorneys for defendant Sylvia Marks (Mr. Ernest Prupis appearing).
GAULKIN, J.S.C., Temporarily Assigned.
Plaintiff Russell Marks instituted this action to determine the allocation of the federal estate tax assessed against the estate of Jerry M. Marks, who died intestate on September 2, 1968. Plaintiff, a son, and defendant Sylvia Marks, the widow, are the sole persons entitled to share in the intestate estate. Their dispute is whether the statutory intestate share payable to defendant, which has qualified as a marital deduction in the assessment of the federal estate tax, should be computed before or after deducting the estate tax thus assessed against the estate. If the computation is made before deduction of the tax, the burden of the tax will fall solely upon plaintiff; if after, plaintiff and defendant will share that burden equally.
Decedent's gross estate (26 U.S.C.A. § 2031) reported on the federal estate tax return was $652,153.27; after deduction of debts and expenses of $108,976.21, the adjusted gross estate (26 U.S.C.A. § 2056(c)) was fixed at $543,177.06. The statutory intestate share distributable to defendant, i.e., one-third of the personal property (N.J.S.A. 3A:4-2), was reported at $181,059.02, which amount *279 was taken as a marital deduction (26 U.S.C.A. § 2056).[*] That deduction reduced the adjusted gross estate to a taxable estate of $307,970.99, against which a net federal estate tax of $92,032.51 was assessed.
By judgment entered July 18, 1973 the final account of the administrators was approved and the balance of principal and income was directed to be distributed to plaintiff and defendant in equal shares, "except as to $23,008.12 reserved from Russell's share, being the amount of the dispute between them relating to the impact of the respective original shares of Russell and Sylvia." The parties have stipulated that if defendant's statutory share is to bear any federal estate tax burden, the retained sum is to be paid in its entirety to plaintiff, and that if it is not to bear such burden, the fund is to be paid to defendant. There is accordingly no need to explore further the manner in which the net tax was computed or how it might be recomputed following this decision. Cf. Case v. Roebling, 42 N.J. Super. 545 (Ch. Div. 1956), fn. 1 at 556-557; 26 U.S.C.A. § 2056(b)(4) (A).
The question thus presented has not been passed upon in any reported New Jersey decisions. Several cases have considered related questions as to the allocation of the federal estate tax burden to a surviving spouse who is a beneficiary under the decedent's will. See Surina v. Gilbert, 54 N.J. 68 (1969); Gesner v. Roberts, 48 N.J. 379 (1967), rev'g 91 N.J. Super. 255 (App. Div. 1966), and aff'g 88 N.J. Super. 278 (Ch. Div. 1965); Bartel v. Clarenbach, 114 N.J. *280 Super. 79 (Ch. Div. 1971); In re Burnett, 50 N.J. Super. 482 (Cty. Ct. 1958); Case v. Roebling, supra; cf. Dodd v. United States, 345 F.2d 715 (3 Cir.1965).
Read together, these cases hold that state law alone determines the allocation of the federal estate tax (Gesner, supra, 91 N.J. Super. at 260); that our apportionment statutes (N.J.S.A. 3A:25-30, et seq.) govern only the allocation of taxes as between probate and non-probate assets (Gesner, supra, 91 N.J. Super. at 259; In re Burnett, supra, 50 N.J. Super. at 494); that a testamentary expression or plan may evidence an intent of the testator that the surviving spouse shall or shall not bear any federal estate tax impact, which intent should be effectuated (Gesner, supra, 48 N.J. at 381), and that "absent an express statement in the will, we should start with the assumption that the testator intended the maximum tax advantage for the estate and maximum benefit to the spouse within the limits of his gift to her" (Ibid).
The parties have stipulated that they have no evidence to offer that would shed light on decedent's intentions or expectations in the devolution of his estate. The holdings of the New Jersey cases thus are not necessarily dispositive here: not only is there no testamentary intent to intuit, but any "assumption" concerning a presumed "maximum benefit to the spouse" is clouded by uncertainty that decedent intended any benefit to the spouse at all.
Case law outside New Jersey is not persuasive. Only a few reported decisions appear to have dealt with the precise issue; they have reached contrary results. See Pitts v. Hamrick, 228 F.2d 486 (4 Cir.1955), First National Bank of Topeka, Kan. v. United States, 233 F. Supp. 19 (D. Kan. 1964), Estate of Whipple v. United States, 286 F. Supp. 674 (W.D. Ky. 1968) aff'd 419 F.2d 494 (6 Cir.1969), and Snodgrass v. United States, 308 F. Supp. 440 (N.D. Ala. 1968) aff'd 427 F.2d 150 (5 Cir.1970), sustaining the computation of the widow's intestate share before deduction *281 of the federal estate tax; contra, Moorman v. Moorman, 340 Mich. 636, 66 N.W.2d 248 (Sup. Ct. 1955), and Williamson v. Williamson, 224 Ark. 141, 272 S.W.2d 72 (Sup. Ct. 1954). A greater number of cases have considered the allocation question in the analogous situation of the surviving widow who exercises a statutory election against a will. Here again two lines of authority have emerged; full statements of the conflicting views and citation of numerous authorities can be found in Hammond v. Wheeler, 347 S.W.2d 884 (Mo. Sup. Ct. 1961), holding the statutory share is to be fixed before deducting the tax, and contra, In re Glover's Estate, 45 Hawaii 569, 371 P.2d 361 (Sup. Ct. 1962).
In determining which of the opposing views to adopt, courts of other states have centered their attention on local law, including such matters as the language of the local statute describing the intestate or elective share (e.g., Pitts v. Hamrick, supra); local law as to the manner of accommodating the Congressional policy incorporated in the marital deduction (e.g., First National Bank of Topeka, Kan. v. United States, supra), and local rules of equitable distribution of decedents' estates (e.g., Hammond v. Wheeler, supra). The cases of other jurisdictions thus offer useful explications of the contrary views; but, as they suggest. New Jersey law and policy must determine the choice to be made between them. Cf. Gesner, supra, 91 N.J. Super. at 268.
New Jersey statutory law offers little assistance to the inquiry. N.J.S.A. 3A:4-2 describes the intestate share of the widow simply as a fraction of "the personal property":
One-third of the personal property shall be distributed to the intestate's husband or widow, as the case may be, and the residue in equal portions among the intestate's children and such persons as legally represent any child who may have died.
*282 Although it might be argued that "the residue" allocated to children is to bear the taxes (cf. National State Bank of Newark v. Nadeau, 57 N.J. Super. 53, 62 (App. Div. 1959); Snodgrass v. United States, supra), nothing appears in the legislative history of this provision or its predecessors to support the conclusion that the Legislature intended to import such meaning in its use of the term "residue." Both parties concede that such a contention would be unsupportable.
N.J.S.A. 3A:25-4 similarly offers little guidance:
After executors or administrators legally account for personal property of the decedent, the court in which they have accounted, may direct a just and equal distribution of the personal property, whereof the decedent died intestate, which remains after payment of debts, funeral charges and other just expenses of this title. (Sec. 3A:4-1 et seq).
The parties agree that the term "debts" as used in the statute includes federal estate taxes (although there is no New Jersey case so holding and such a reading might be open to dispute, see, e.g., Hammond v. Wheeler, supra, 347 S.W.2d at 887); nevertheless the question of allocation of such a "debt" among the heirs remains. As is clear from the New Jersey cases involving a spouse who takes a share of the residue by will, the mere fact that she participates in the residue after payment of "debts" does not itself require that she share proportionately in the estate tax. See Gesner v. Roberts, supra; cf. N.J.S.A. 3A:25-2. The statutes with respect to intestate succession thus neither specifically provide for, nor can they be interpreted to extend to, the question of allocation presented here.
Recourse must then be made to our decisional law. As noted, the New Jersey cases, limited to tax allocations under wills, focus principally on the testator's actual or assumed intent, and "start with the assumption that the testator intended the maximum tax advantage for the estate and the maximum tax benefit to the spouse * * *." Gesner, supra, 48 *283 N.J. at 381. Defendant urges that a like "assumption" be indulged here and decedent's assumed intent be effectuated; plaintiff argues that "intestacy removes any interpretation of decedent's intentions" and that accordingly there is no basis for imposing the estate tax burden other than upon the entire estate before distribution to the various takers.
The rationale of the cases supports the position of defendant spouse. Although the intestate did not affirmatively direct a gift to his spouse, the basic considerations which justify the "assumption" of Gesner are equally relevant and compelling with respect to the distribution of the intestate estate. Whether a decedent's estate devolves by will or by operation of law, it can be assumed that the decedent would want the maximum tax advantage for his estate and would want his spouse to benefit to the maximum extent. The mere fact that a decedent has not executed a will does not warrant any inference that his concerns for his estate or spouse are any less or different.
Of course, a testator directs the distribution of his estate and the "assumption" of likely intent can readily be read into and implemented as part of his will, while the devolution of an intestate estate is determined by statutory rules which exist entirely independent of the intestate's unexpressed intent. Although it might be argued therefrom that an intestate's intent is of no force in application of the statutory mandates (cf. Kimley v. Whittaker, 63 N.J. 235, 238 (1973)), N.J.S.A. 3A:4-2 and 3A:25-4 themselves are appropriately read here to accommodate the presumed intent of those who died intestate; to do so is simply to offer "a sympathetic response consonant with what one may presume the legislature would have said had it indeed spoken." N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 339 (1972).
The New Jersey cases have relied on two other considerations which are also relevant and persuasive here. First, several cases have concluded that exempting the spouse's *284 share from the tax burden is an appropriate way of advancing the Congressional policy underlying the marital deduction. Judge (later Justice) Schettino stated the rationale in Case v. Roebling, supra, 42 N.J. Super. at 562.
We find in 94 Congressional Record 3037 the following:
"Provision is made for estate and gift tax splitting of noncommunity property. This provision will apply to persons dying after the date of the enactment of this bill, so that community property and noncommunity property may be placed on an equal basis at the same time."
Inherent in Congress' plan to equalize the estate tax as it applied to estates in common-law and community property states was the intent to give the same treatment and benefits to surviving spouses in both categories of states. Where a married resident dies in a community-property state, the surviving spouse is considered to own one-half of the entire community estate of the deceased spouse and this one-half share is not subject to the estate tax. In a common-law state, where a surviving spouse is entitled to a portion of the deceased spouse's estate, a share up to one-half of the estate received by the surviving spouse is not subject to the federal estate tax.
To the same effect, see Gesner, supra, 88 N.J. Super. at 285; Dodd v. United States, supra, 345 F.2d at 718.
Second, as stated in the Chancery Division opinion in Gesner, 88 N.J. Super. 288, the spouse's claim "may also be supported by resort to the adoption of a theory of partial equitable apportionment":
It would seem, then, that the Congress, in granting to the states the right to determine where the burden of federal estate taxes should lie, implicitly expected that common law states such as ours would determine either by legislation or judicial decision that the full benefit of the marital deduction would be accorded where applicable to the surviving spouse. Such a result can only be achieved by recognizing that the surviving spouse's share which qualified for the marital deduction creates no tax liability for the estate. Should the surviving spouse's share come to him or her under a general residuary clause, assuming no testamentary instruction as to tax burden, it would be inequitable to require such surviving spouse to bear any burden of the tax imposed on the remainder of the estate upon which the tax is levied.
*285 In reversing the Chancery Division in Gesner, the Appellate Division specifically rejected that theory (91 N.J. Super. at 263) but the later reversal of the Appellate Division by the Supreme Court (48 N.J. 379), albeit without reference to equitable apportionment, would appear to nullify the authority of the Appellate Division view.
Whether these additional reasons are read as central to the holdings of the cases or makeweight arguments only, they do indicate the view of our courts that exemption of the spouse's share is both equitable and supportive of the Congressional marital deduction plan. Those considerations carry the same weight whether the decedent died testate or intestate.
In short, the reasoning favoring the spouse-beneficiary is equally applicable to the spouse-distributee. That reasoning requires that judgment be entered for defendant directing her intestate share be computed before deduction of the federal estate tax; and that accordingly the $23,008.12 escrow fund be paid over to her.
NOTES
[*] In addition to the present parties, decedent was survived by a daughter, who was also entitled by N.J.S.A. 3A:4-2 to a one-third intestate share in personalty. As part of a settlement of other disputes not here relevant, the daughter relinquished her intestate share in favor of plaintiff and defendant equally. The additional one-sixth share in the estate thus distributable to defendant did not qualify for the marital deduction, and the parties acknowledge that the distributions made to defendant were appropriately charged for the federal estate tax generated by that non-statutory share.